Mark A. Sandberg, Esq.
SANDBERG, WUESTENFELD & COREY
701 West 8th Avenue, Suite 1100
Anchorage, AK 99501
Tel: 907-276-6363
Fax: 907-276-3528

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT KETCHIKAN

| | |
|---|---|
| CAROLYN L. THOMAS, <br><br> Plaintiff, <br><br> v. <br><br> KETCHIKAN GATEWAY BOROUGH and ROY ECKERT, in his individual and official capacity. <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 5:06-cv-00001-JWS<br>) |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

TABLE OF CONTENTS

I.   INTRODUCTION............................................... 1

II.  FACTUAL BACKGROUND........................................ 1

     A.   A Brief Factual Summary............................. 1

     B.   Events Prior to February 2005...................... 4

     C.   February 2005 – June 2005.......................... 5

     D.   Thomas Departs Ketchikan........................... 6

     E.   Matters Come to a Head............................. 7

     F.   An Ordinance is Passed............................. 8

     G.   Thomas Terminated for Work Location Refusal........ 10

     H.   Post–Termination................................... 12

III. ARGUMENT.................................................. 13

     A.   A Brief Summary.................................... 13

     B.   The Alleged Constitutional Violations.............. 13

     C.   There Are No Constitutional Violations............. 14

          1.   Introduction................................. 14

          2.   Privileges and Immunities.................... 14

          3.   Contracts Clause............................. 16

     D.   Eckert is Immune from § 1983 Liability............. 18

     E.   No Valid Promissory Estoppel Claim................. 21

IV.  CONCLUSION................................................ 24

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276 - 6363

i

I.    INTRODUCTION

Carolyn Thomas (Thomas) was fired by the Ketchikan Gateway Borough (KGB) after she moved to Oregon and refused to report to work in Ketchikan.  Thomas filed this lawsuit against KGB and Roy Eckert (Eckert), the Borough Manager, who was her boss. Thomas alleges that the termination violated her constitutional rights, giving rise to a claim under 42 U.S.C.§ 1983.  She also alleges a state law claim based upon a promissory estoppel theory.

By this motion, Eckert and KGB (collectively "defendants") seek partial summary judgment on the following grounds:

A.    Thomas does not possess a valid § 1983 claim against either KGB or Eckert; and

B.    Eckert is immune from this § 1983 claim; and

C.    Thomas does not possess a valid promissory estoppel claim under Alaska law.

II.    FACTUAL BACKGROUND

A.    A Brief Factual Summary

Thomas was hired in 2004 to be the KGB Human Relations Manager/Safety Officer.  For roughly one year, Thomas did the job and was a valued employee.  Then, in February 2005, Thomas

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 1 of 25

approached Eckert and said family problems made it necessary for her to leave KGB and relocate to Oregon.

At this point, the parties' accounts diverge. Thomas has testified that Eckert agreed she could continue doing the KGB HR/Safety job remotely from Oregon. Eckert has testified that he agreed Thomas could help conclude the negotiation of some pending union contracts after leaving for Oregon. Except for that work, which Eckert thought might take a month or two, Eckert believed Thomas' employment with KGB would end when she moved.

Thomas left for Oregon in early June, 2005. She quickly learned that Eckert was telling KGB employees that Thomas would be working remotely on the union contracts, but otherwise was gone. This made Thomas quite angry. A flurry of correspondence followed between Thomas and Eckert regarding who had said what. Thomas maintained she was still the KGB HR Manager/Safety Officer. Eckert maintained she had resigned and was only being paid to close out the union negotiations.

In early August 2005, Eckert offered Thomas the opportunity to return and do the KGB HR job in Ketchikan. Eckert said she would need to work in Ketchikan on Borough property if she wanted the job. Thomas responded that KGB had

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 2 of 25

two options.  It could allow her to continue doing the HR job from Oregon with all job responsibilities restored, or it could negotiate a settlement.  She was not moving back to Ketchikan.

Rather than just firing Thomas, KGB decided to pass an Ordinance specifying both work location and residency requirements for all KGB employees.  The Borough attorney drafted proposed Ordinance 1369.  Ordinance 1369 includes KGB Code § 30.30.038 dealing with work location.  This new section provides that Borough employees shall work at Borough owned or leased facilities.  This requirement may be waived only by the Borough Manager in writing on the approval of the Assembly.

Ordinance 1369 also amended KGB Code § 30.20.016 by requiring all employees to reside within the boundaries of the Borough within three months after the latter of October 1, 2005 or their date of hire.  Had Ms. Thomas been a KGB employee living in Oregon on January 1, 2006 (three months after October 1, 2005), she would have been in violation of § 30.20.016.

Her employment did not last that long.  Ordinance 1369 was passed by the Assembly on September 19, 2005.  Eckert wrote Thomas offering one more chance to resume her duties in Ketchikan.  Ms. Thomas replied in early October 2005, declining Eckert's offer.

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

In October 2005, Eckert wrote Thomas, stating that it was not permissible under the KGB code to perform her duties from Oregon.  Given her refusal to report to a work location in Ketchikan, Eckert said he had no choice but to terminate her. Thomas was terminated effective November 1, 2005.  Following an unsuccessful grievance process, this lawsuit followed.

Defendants offer this brief factual summary, and the more detailed version that follows, in support of all three Motions for Partial Summary Judgment.

### B.    Events Prior to February 2005

Carolyn Thomas is a 62-year-old woman who lives in Wallowa, Oregon  (Thomas depo at page 4).[1]  Ms. Thomas began working for KGB on March 29, 2004  (Thomas depo at page 12). Before that, she had worked for Louisiana Pacific in Ketchikan for 13 years  (Thomas depo at page 11).  When she joined KGB, Thomas was hired for the position of Human Resources Manager/Safety Officer (Thomas depo at page 13; attachment D).[2]

---

[1] The depositions of Carolyn Thomas (Exhibit A), Roy Eckert (Exhibit B), and Scott Brandt-Erichsen (Exhibit C) are attached to this motion.  For the sake of clarity, this Memorandum uses the deponent's name and the transcript page to reference record citations.

[2] There is a factual dispute regarding whether it would even be possible to perform the job of KGB Human Resources Manager/Safety Officer remotely from Oregon.  However, the court does not need to resolve that dispute in order to rule upon these three motions.

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 4 of 25

Everyone agrees Thomas did a good job while in Ketchikan serving as HR manager  (Eckert depo at page 82).

C.    February 2005 - June 2005

In February 2005, Thomas told Eckert that she had family problems that would require her to move to Oregon (Thomas depo at page 17).  Thomas expected that her employment with KGB would end in June 2005 (Thomas depo at page 17).  The subject of working remotely was not discussed at that point (Thomas depo at page 17).

During the next few months, Thomas and Eckert discussed the possibility of Thomas doing at least some work for KGB after June 2005 (Thomas depo at page 18-19; Eckert depo at page 32).  Thomas claims Eckert told her she could do the entire job remotely if she wanted to do that (Thomas depo at page 15). Thomas says they discussed it several times (Thomas depo at page 16).  No other people were present (Thomas depo at page 19).  No agreement was reduced to writing (Thomas depo at pages 20-21). Thomas says Eckert (and only Eckert) authorized her to continue doing the KGB HR/Safety Officer job remotely from Oregon (Thomas depo at page 21).

Eckert has been KGB Borough Manager since 2002 (Eckert depo at page 3).  Eckert acknowledges discussing the subject of

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Thomas doing some work for KGB remotely (Eckert depo at page 32). Eckert says Thomas came to him in April or May stating that some union contracts were nearing completion and that she would hate to see someone start over on those (Eckert depo at page 32). Thomas asked whether she could continue working on those agreements from her home in Oregon where she was going to be taking care of her mother (Eckert depo at page 32). Eckert saw no problem and believed such an arrangement would actually save the Borough money and time (Eckert depo at page 32). Eckert understood that Thomas was resigning, except for finishing up the union contracts (Eckert depo at page 33). He expected those would be done by July 2005 (Eckert depo at page 34).

D.    <u>Thomas Departs Ketchikan</u>

Thomas left Ketchikan on the afternoon of June 6, 2005 (Thomas depo at page 70). Eckert told a staff meeting that Thomas would be finishing up the union contracts and that her employment otherwise was done (Eckert depo at page 43). This angered Thomas and kicked off an exchange of correspondence and emails. Thomas sent an email to all department heads and

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

supervisors informing them that she was still the KGB HR Manager/Safety Officer (Thomas depo at page 61; exhibit E).

E.    Matters Come to a Head

By early August 2005, Eckert was well aware that there was a dispute as to whether Thomas was going to keep her job and work full-time from Oregon (Eckert depo at page 96).  On August 5, 2005, Thomas wrote to Eckert setting forth her account of events (Thomas depo at 69; Exhibit G).  Thomas told Eckert that KGB had two alternatives.  If KGB paid a settlement of $326,108, Thomas would submit a letter of resignation (Exhibit G).  Otherwise, she would continue as HR Manager while living in Oregon (Exhibit G).  Thomas also threatened to retain legal counsel and pursue a claim against Eckert and KGB (Exhibit G).

Eckert sent Thomas a Memorandum entitled "Work Location" (Eckert depo at page 96; exhibit F).  The Memorandum begins by referencing the confusion surrounding Thomas' work being done from her mother's home in Oregon (Exhibit F).  It notes there is a disagreement regarding who said what and when (Exhibit F).  But the Memorandum does not focus upon that disagreement (Exhibit F).  Instead, it offers Thomas the opportunity to keep her job.

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 7 of 25

The Memorandum says that Eckert had previously offered Thomas the opportunity to continue doing her work in Ketchikan, but that Thomas had declined (Exhibit F).  Eckert asked Thomas to reconsider (Exhibit F).  Eckert said he wanted to know by August 12, 2005 whether Thomas would continue with KGB (Exhibit F).  But he also made clear that Thomas would have to do her work in Ketchikan, stating:

> "If you decide to continue your employment with the Borough, I need to have you available for work at the Borough offices on or before September 1st." (Exhibit F)

On August 12, 2005, Thomas responded to Eckert's Memorandum (Thomas depo at page 79; Exhibit H).  Thomas, once again, states that KGB has two options (Exhibit H).  KGB can allow Ms. Thomas to continue as HR Manager while living in Oregon or it can negotiate a settlement (Exhibit H).  Ms. Thomas says she is not moving back to Ketchikan (Exhibit H).

F.    An Ordinance is Passed

At that point, KGB had grounds to terminate Ms. Thomas.  The Borough Manager had given her a directive (Eckert depo at page 96).  She had refused to comply (Exhibit H).  But she was not fired at that time.

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 8 of 25

Rather than just firing Ms. Thomas, the Borough decided to pass an Ordinance specifying both work location and residence requirements for all KGB employees (Brandt-Erichsen depo at page 65; Exhibit I). The Borough Attorney, Scott Brandt-Erichsen (Brandt-Erichsen), drafted proposed Ordinance 1369 (Brandt-Erichsen depo at page 55; Exhibit I).

Ordinance 1369 contained new KGB Code § 30.30.038 entitled "Work Location" (Exhibit I). This states:

> "Borough employees shall report to a regular work location designated by the Manager or designee. All regular work locations to which Borough employees report to work shall be controlled by the Borough, whether as a Borough owned or Borough leased facility. Where a Borough employee performs services which require movement from location to location, the regular work location shall be that designated site to which the employee routinely reports at the beginning of a shift. The provisions of this section may be waived only to the extent and upon the terms authorized by the manager in writing and approved by the Assembly by motion or resolution."

Ordinance 1369 also addressed several other personnel issues. Among these, it amended KGB code § 30.20.016 entitled "Residency" (Exhibit I). The amended section provides that residency is not a condition of initial hire, but that all employees shall reside within the boundaries of KGB within 3 months after the later of October 1, 2005 or their date of hire (Exhibit I). Had Ms. Thomas been employed by KGB while living

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 9 of 25

in Oregon on January 1, 2006 (three months after October 1, 2005), this provision would have applied to her (Exhibit I).

### G.    Thomas Terminated for Work Location Refusal

On September 26, 2005, Eckert wrote to Thomas advising her that Ordinance 1369 had been passed by the Borough Assembly (Thomas depo at page 80; Exhibit J). Eckert again offered Thomas the opportunity to return to work in Ketchikan (Exhibit J). Eckert said he needed a final decision from Thomas by October 7, 2005 (Exhibit J).

Thomas responded on October 7, 2005 (Thomas depo at page 81; Exhibit K). The letter states that Thomas gave Eckert her final decision regarding returning to Ketchikan back in August (Exhibit K).

Eckert wrote again on October 13, 2005 (Thomas depo at page 82; Exhibit L). The letter says that Ordinance 1369 became effective October 4, 2005 (Exhibit L). The letter states:

> "Accordingly, beginning October 4, 2005, it will not be permissible under the code for you to perform your duties from Oregon. In your letter of October 7, 2005, you have communicated that you refuse to regularly report to a work location in Ketchikan. This position leaves me no choice but to terminate you for failure to comply with mandatory work rules set out in the Borough Code."

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 10 of 25

The letter offered Thomas the opportunity to present information regarding why she should not be terminated (Exhibit L). A telephonic discussion was held, but the results were unsatisfactory (Thomas depo at page 82 – 83).

On October 21, 2005, Eckert wrote a final termination letter (Eckert depo at page 97; Exhibit M). The letter states:

> "An employee does not obtain a vested right to a particular desk, chair, or work location. The employer has the right to require that employees work only in approved locations. Therefore, I find that the fact you were employed prior to adoption of Ordinance 1369 and its requirement that employees work only in Borough owned or controlled facilities is not relevant, and will not preclude application of that Ordinance to you.
>
> "Again, after reviewing our conversation of last Wednesday, I can find no compelling reason not to require that the ordinance be complied with. Therefore, you are terminated effective November 1, 2005."

The letter is quite clear. Thomas was terminated for her refusal to comply with KGB Code § 30.30.038, requiring employees to work at a Borough-owned or leased facility. As the Borough attorney stated:

> "She was offered the opportunity to return to the Borough offices to perform her duties in August, prior to the adoption of that ordinance, and she rejected that opportunity. Subsequently, after adoption of the Ordinance, she was offered the opportunity to return to the Borough offices to work and she again declined that opportunity." (Brandt-Erichsen depo at page 54.)

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Admittedly, there is some confusion in the record, with both parties periodically equating the new residency requirements of KGB Code § 30.20.016 with the work location requirements of KGB Code § 30.30.038. However, it is undisputed that Ms. Thomas was not yet in violation of the new residency requirement when she was terminated. KGB Code § 30.20.016 did not require residency until 3 months after the later of October 1, 2005 or Thomas' date of hire. The residency requirement of KGB Code § 30.20.016 would not have applied to Thomas before January 1, 2006 (Exhibit I). Thomas was terminated several months before then (Exhibit M). As Eckert stated in his deposition:

> "Q: Ok. But I suppose when you live on an island in a remote location, they may, as a practical matter, be synonymous, but was she fired because she lived in Oregon?
>
> "A: She was being fired because she was not working here in Ketchikan and in a Borough-controlled office. And that's -- you know, we'd asked her to, given her several opportunities to do so, and she said no." (Eckert depo at page 98.)

H. Post-Termination

Thomas' termination was the subject of an unsuccessful grievance. The facts surrounding the grievance process are not

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 12 of 25

relevant to any of the three Motions for Partial Summary Judgment.


III.   ARGUMENT

A.    A Brief Summary

KGB fired Thomas because she refused to report to her designated work location in Ketchikan.   Firing Thomas was completely appropriate, with or without the passage of Ordinance 1369.  In terms of this case:

1.   No one's constitutional rights have been violated.  There is no valid claim against either KGB or Eckert under 42 USC § 1983; and

2.   Eckert enjoys qualified immunity from liability pursuant to Wood v. Strickland, 420 U.S. 308 (1975) and its progeny; and

3.   Thomas does not have a valid promissory estoppel claim under Alaska Law, as set forth in Simpson v. Murkowski, 129 P3d 435 (Alaska, 2006).


B.    The Alleged Constitutional Violations.

The complaint (Docket 1) alleges that Eckert and KGB violated Thomas' constitutional rights in two different ways:

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

1.    Thomas alleges that her termination violated her rights under the Privileges and Immunities Clause of Article Four, § 2 (Docket 1, ¶ 13 – 14); and

2.    Thomas alleges KGB violated constitutional rights secured by the Contracts Clause of Article One, § 10 (Docket 1, ¶ 15).

### C.    There Are No Constitutional Violations

#### 1.    Introduction

Thomas was fired because she refused to show up for work.  Thomas was terminated effective November 1, 2005 because she refused to comply with KGB Code § 30.30.038 regarding Work Location.  Firing an employee who refuses to appear for work does not raise Constitutional issues.

#### 2.    Privileges and Immunities

Thomas claims a violation of rights secured under the Privileges and Immunities Clause of the United States Constitution.  Defendants have been unable to find any case remotely suggesting that it is unconstitutional for KGB to require its employees to show up for work.  There is no credible constitutional challenge to application of the Work Location requirements of KGB Code § 30.30.038.

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 14 of 25

When she was terminated, Thomas was not yet in violation of the residency requirements found in KGB Code § 30.20.016. However, it is not unconstitutional to require public employees to reside in the political subdivision that employs them.

In <u>Salem Blue Collar Workers Association v. City of Salem,</u> 33 F. 3d 265, 270 (3rd Cir. 1994), the court confronted a Privileges and Immunities challenge to a residency requirement. Rejecting the claim, the court said:

> "[D]irect public employment is not a privilege or fundamental right protected by the Privileges and Immunities Clause of Article Four."

The <u>Salem</u> case squarely rejects the idea that there is an interest in public employment that is protected by the Privileges and Immunities Clause. The decision is a particularized application of a more general pronouncement made by the United States Supreme Court several decades earlier in <u>McCarthy v. Philadelphia Civil Service Commission,</u> 424 U.S. 645, 96 S. Ct. 1154, 1155 (1976) where the Court said:

> "[A]ppellant claims a constitutional right to be employed by the city of Philadelphia *while* he is living elsewhere. There is no support in our cases for such a claim. (italics in original*).

<u>McCarthy</u> is a right to travel case. <u>Salem</u> is a Privileges and Immunities case. Together, they demonstrate that

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 15 of 25

it would not have been unconstitutional to terminate Thomas because she refused to live in Ketchikan.

Thomas was terminated for refusal to comply with the Work Location requirements of KGB Code § 30.30.038. However, it would have been constitutionally permissible for KGB to terminate Thomas for refusal to comply with the residency requirement of KGB Code § 30.20.016. Either way, Thomas has no credible constitutional challenge.

### 3. Contracts Clause

Prior to her termination, Thomas was an employee of KGB. Her rights and obligations as a KGB employee were defined by Title 30 of the KGB Code. That Title sets out the "Ketchikan Gateway Borough Personnel Policies." Title 30 establishes a merit system for KGB employees. Discipline, removal, appeal and grievance procedures are all defined by Ordinance.

KGB Code § 5.20 provides that Eckert, as Borough Manager, possesses the administrative power of the Borough. That includes the normal prerogatives of management, such as deciding how his workforce will be deployed.

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 16 of 25

Thomas contends that passage of Ordinance 1369 somehow deprived her of a "contractual" right to do the KGB HR job remotely from Oregon. That claim is unsupportable. Viewing the facts most favorably to Thomas,[3] the most Thomas could possibly prove is that:

a)   Eckert authorized Thomas to perform the KGB HR job remotely from Oregon; and

b)   Eckert (and/or the KGB Assembly) changed his mind and decided the job needed to be done at the Borough office building in Ketchikan.

Even if successfully offered, such proof will not support a claim under the Contracts Clause. The tenure, salary and duty of public employees always remain subject to modification, except for work that has already been performed. Rotunda & Nowak Treatise on Constitutional Law (3d) § 15.8, n. 47 (1999); Dodge v. Board of Education, 302 U.S. 74, 58 S. Ct. 98 (1937) (presumption against private contractual or vested rights); Keefe v. Clark, 322 U.S. 393, 64 S. Ct. 1072, 1074 (1944) (obligation alleged to have been impaired must be clearly and unequivocally expressed).

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

---

[3] As we must for purposes of this Motion for Partial Summary Judgment. The actual facts are, of course, hotly disputed.

In <u>Cook County College Teachers Union v. Taylor,</u> 423 F. Supp. 270, 274 (N.D. Ill. 1977), tenured teachers at a community college objected to implementation of a requirement that they live in Chicago. Although the teachers did not assert a Contracts Clause claim, the case is instructive. The court held that, so long as the new regulation did not render it impossible for tenured employees to comply and retain employment, it could not be said to deprive them of any property right.

As the United States Supreme Court said in the <u>McCarthy</u> case, Thomas has no constitutional right to be employed by KGB while living elsewhere. Thomas most assuredly has no constitutionally protected right to do the KGB HR job at any particular work location.


D.    <u>Eckert is Immune from § 1983 Liability.</u>

Neither KGB nor Eckert have violated Thomas' constitutional rights. Therefore, no viable claim is plausible under 42 USC § 1983. However, Eckert also enjoys an additional defense.

In <u>Wood v. Strickland,</u> 420 U.S. 308 (1975) the Court held that individual public officials enjoy a qualified immunity

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 18 of 25

from claims under 42 USC § 1983.  The Court said a  compensatory award  was  only  appropriate  if  the  official  acted  with impermissible  motivation  or  with  disregard  of  the  plaintiff's clearly established constitutional rights.  Id.

The  parameters  of  this  qualified  immunity  defense  have been  the  subject  of  much  litigation  over  the  decades  since  Wood was  decided.  The  subjective  portion  of  the  test  articulated  in Wood  was  discarded  in  Harlow v. Fitzgerald,  457 U.S. 800 (1982). In  Crawford-El v. Britton,  523 U.S. 574 (1998), the  Court  said that  a  defense  of  qualified  immunity  may  not  be  rebutted  by evidence  that  a  defendant's  conduct  was  malicious  or  otherwise improperly  motivated.  Evidence  concerning  a  defendant's subjective  intent  is  simply  irrelevant.  Id.

After  Harlow,  the  focus  was  placed  upon  the  objective reasonableness  of  an  official's  conduct.  In  Anderson v. Creighton,  483 U.S. 635 (1987) the  Court  addressed  the  question of  how  clearly  established  a  constitutional  right  must  be  before an  individual  defendant  could  be  held  liable  for  violating  it. The  Court  said  that  the  contours  of  the  asserted  constitutional right  must  be  sufficiently  clear  that  a  reasonable  official would  understand  that  what  he  was  doing  violated  that constitutional right.

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 19 of 25

The Court visited this issue again in <u>Wilson v. Layne,</u> 526 U.S. 603 (1999). <u>Wilson</u> holds that a court evaluating a claim of qualified immunity must first determine whether Plaintiff has alleged deprivation of an actual constitutional right that was clearly established at the time of the alleged violation. An official action is protected by qualified immunity unless its unlawfulness is apparent in light of preexisting law. <u>Id.</u> When the state of preexisting law is undeveloped, official action is immune. <u>Id.</u>

Thomas was terminated by Eckert for refusal to comply with Ordinance 1369. In <u>Grossman v. City of Portland,</u> 33 F. 3d 1200 (9th Cir. 1994) the Ninth Circuit addressed the immunity enjoyed by a public official enforcing a duly enacted ordinance. The Ninth Circuit said public officials are ordinarily entitled to rely on the assumption that council members have considered the views of legal counsel and concluded that an ordinance is a valid and constitutional exercise of authority. If the ordinance is subsequently declared unconstitutional, relief lies only against the public entity. <u>Id.</u> The interest in vindication of constitutional guarantees is fully satisfied without holding the public official individually liable. <u>Id.</u>

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 20 of 25

Returning to the facts of our case, the most that can be proved is that Eckert terminated Thomas for refusal to comply with Ordinance 1369.  As a public official enforcing a duly promulgated ordinance, Eckert is entitled to immunity from § 1983 claims.

The qualified immunity defense does not raise any jury questions.  Hunter v. Bryant, 502 U.S. 224 (1991).  Immunity should be decided by a court long before trial.  Id.  There is no basis in this case for holding Eckert individually liable.


E.    No Valid Promissory Estoppel Claim.

Aside from the constitutional claims, Thomas seeks reliance damages from KGB under Alaska law regarding promissory estoppel.[4]  To prevail on a claim for promissory estoppel, Thomas must satisfy a four-part test.  Simpson v. Murkowski, 129 P3d 435, 440 (Alaska 2006).  Thomas cannot satisfy any of the requirements imposed by Alaska law:

1.    Alaska requires that a plaintiff must have made a substantial change of position in reliance upon the

---

[4] The promissory estoppel claim is, of course, inconsistent with Thomas' claim that she enjoys "contractual" rights, since promissory estoppel is not available when an actual contract exists.  Rather, it is an equitable means of enforcing a promise.

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

promise. Thomas was moving to Oregon anyway. The discussion began when Thomas advised Eckert that family problems required her to leave Ketchikan. Eckert did not ask Thomas to move to Oregon.

2. Alaska requires that detrimental reliance upon the promise be either foreseen or foreseeable. But, once again, there was no detrimental reliance at all. Thomas approached Eckert because she already intended to move to Oregon.

3. Alaska requires that an actual promise was made, and that the promise itself induced the action. Viewed most favorably to Thomas, the most she could prove is that Eckert authorized her to perform the HR job from Oregon and then changed his mind. No reasonable person could conclude that Eckert permanently and irrevocably surrendered the power to reassign Thomas to a new work location. Thomas didn't believe that. Discussing their arrangement, Thomas said the following about what she was "promised:"

> Q: Okay. And Mr. Eckert certainly knew that you were going to start working remotely in June of 2005, correct?
> A: Yes.
> Q: Did you and Mr. Eckert have an understanding as to how long you would be working remotely?
> A: No.

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 22 of 25

Q:   Did   you   and   Mr.   Eckert   have   any understanding regarding probationary period or try-out for this new arrangement?

A:   No.

Q:   Had either of those things been discussed with Mr. Eckert before you left?

A:   No.

Q:   Suppose Mr. Eckert had decided having you working remotely just wasn't working out.   What was your expectation of what happened?

MR. VENNEBERG:   Calls for speculation.   You can go ahead if you can.

THE WITNESS:   Umm, if – no, I'm not going to say "if."  What would happen?

Q:   (By Mr. Sandberg) Right.

A:   He would discuss it with me, and we'd come to some conclusion.

That's not a good answer, but I can't give you a good answer.

Q:   When you left Ketchikan in June of 2005, had Mr. Eckert promised that under no circumstances he would require you to come back and do your job in Ketchikan?

A:   I hadn't – no. (Thomas depo. at page 59-61).


4.   Alaska requires that enforcement of the promise must be necessary in the interest of justice.   For all of the reasons set forth in this memorandum, justice does not require that KGB pay Thomas anything.

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 23 of 25

IV.    <u>CONCLUSION</u>

Defendants respectfully request that the Court grant partial summary judgment establishing that:

A.    Thomas does not possess a valid § 1983 claim against either KGB or Eckert; and

B.    Eckert is immune from this § 1983 claim; and

C.    Thomas does not possess a valid promissory estoppel claim under Alaska Law.

If the Court agrees with defendants and grants all three motions for partial summary judgment, then entry of a final judgment on the merits would be appropriate since the Court will have resolved all of the claims advanced by Thomas in this lawsuit.

DATED this 30th day of October, 2006, in Anchorage, Alaska.

s/ Mark A. Sandberg_
701 W 8th Avenue, Ste. 1100
Anchorage, Alaska 99501
Phone: (907) 276-6363
Fax: (907) 276-3528
E-Mail: msandberg@aol.com
Alaska Bar No.: 7510084

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 24 of 25

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th
day of October, 2006 a copy of the
foregoing discovery responses
was served by regular U.S. Mail on:

Scott Brandt-Erichsen
Borough Attorney
Ketchikan Gateway Borough
344 Front Street
Ketchikan, Alaska 99901

Michael N. White
Friedman, Rubin & White
1126 Highland Avenue
Bremerton, Washington 98337

Terry A. Venneberg
1126 Highland Avenue, Ste. 101
Bremerton, Washington 98337

s<u>/ Mark A. Sandberg</u>

SANDBERG,
WUESTENFELD
& COREY
701 WEST 8TH AVENUE
SUITE 1100
ANCHORAGE, AK 99501
(907) 276-6363

Motions for Summary Judgment
*Thomas vs Ketchikan Gateway Borough*
Case No. 5:05-cv-00001-JWS
Page 25 of 25