THOMAS v. KETCHIKAN GATEWAY BOROUGH, ET AL.                SCOTT BRANDT-ERICHSEN
7/19/2006

Page 34

1  Q  Okay. We have the -- our disclosures in the case in
2  front of you here.....
3  A  Okay.
4  Q  .....in a binder.
5  A  Do you want me to consult something?
6  Q  Yes. If you would go to KB074. Now, I'll represent
7  to you that the binder contains the exhibits that were
8  offered at the grievance hearing.
9  A  I've got it.
10 Q  All right. And Exhibit 13, was it the Borough's
11 contention that Exhibit 13 somehow supported Ms. Thomas'
12 termination?
13 A  Well, actually, I think she was terminated for
14 failing to return to work, here.
15 Q  Right.
16 A  Yeah. And my question wasn't very well articulated.
17 I was -- what I was asking about was the so-called after-
18 acquired evidence, that the Borough offered at the
19 grievance hearing. Was it your understanding that that
20 evidence consisted of Exhibits 13 through 27, which.....
21 A  I probably should take some time to look at (words
22 indiscernible -- simultaneous speech).
23 Q  Sure, absolutely. Feel free. It would be KB74
24 through KB129. We can go off record while you do that.
25 A  Okay.

Page 35

1  Q  Yeah.
2     MR. COSSMAN: Going off record. The time is 2:43.
3     Okay, back on the record. The time is 2:44.
4  Q  Okay. I had asked you before our break about the
5  documents marked KB74 through KB129. Was it your
6  understanding that these were exhibits that were offered
7  as so-called after-acquired evidence during the grievance
8  hearing involving Ms. Thomas?
9  A  I believe they were. Whether they were additional
10 documents which were offered as exhibits, I would have to
11 look at my file on the -- the grievance hearing, But I
12 believe that each of these were offered as exhibits at
13 that hearing.
14 Q  Okay. And what it's asking about was Exhibit 13.
15 A  Yes?
16 Q  .....which is KB074 and 075.
17 A  Do you have an understanding as to why that was
18 offered as an exhibit.....
19 A  I do.
20 Q  Okay, what is that understanding?
21 A  Well, taken in combination, Exhibit 13, which is
22 KB074 and the -- and then the balance of the exhibits,
23 show a situation where persons were provided compensation
24 to which they were not entitled to under the Code.
25 Q  Okay. Oh, sorry, go ahead.

Page 36

1  A  And in situations where Ms. Thomas -- her signature
2  appears on the documents authorizing and approving that
3  compensation, which you know most Human Resources Manager
4  type persons would, if they're doing their job correctly,
5  apply the proper rules and follow the Code, as opposed to
6  something different.
7  A  Okay. Which persons were provided with compensation
8  that they should not have been provided with?
9  A  Well, if you look at the exhibits here, some of them,
10 I think are reflected in these exhibits and some of them
11 may not be. David Gutzman appears to be one of the
12 employees. Do you want me to just read through the names,
13 here?
14 Q  If you could just tell me, to your understanding,
15 which employees were provided with compensation that they
16 should not have been provided with?
17 A  Okay. In responding, am I answering based upon what
18 the Borough's position was in the arbitration, or in the
19 grievance hearing, or am I answering based upon my
20 personal opinion? Or -- on what basis do you want me to
21 provide the information?
22 Q  Well, let me ask you about the Borough's position at
23 the grievance hearing.
24 A  The Borough's position at the grievance hearing is as
25 reflected by these exhibits and then the transcript of the

Page 37

1  hearing. I made the arguments at that hearing. I haven't
2  read them recently. I can try and summarize them, but I -
3  - the odds of me being inaccurate in some details are
4  fairly high and at that time and in the transcript, I
5  think there was a fairly detailed description of who was
6  either placed at the wrong step initially, or who got
7  larger than perhaps they should have.
8     MR. SANDBERG: Okay, Terry, can I try to help you
9  out, here? Just, only because the reason -- we will not
10 attempt to expand the after-acquired evidence argument
11 beyond what was made at the ad hoc hearing, so I think he
12 can confine his answers to the exhibits in front of him.
13 In other words, we're not going to -- I'm not -- if we had
14 more stuff that I was going to try to offer at trial,
15 you'd have it now.
16    MR. VENNEBERG: Right.
17    MR. SANDBERG: And so, having not provided you
18 anything beyond what was provided there.....
19    MR. VENNEBERG: Right.
20    MR. SANDBERG: .....it's not my intention to try to
21 expand that defense beyond what was provided there.....
22    MR. VENNEBERG: Right. Right.
23    MR. SANDBERG: .....and therefore, you know, when he
24 starts saying what he personally knows, he may know things
25 that aren't reflected in here, but we're not going to try

10 (Pages 34 to 37)

PACIFIC RIM REPORTING, LLC
www.courtreportersalaska.com

Exhibit C
Page 10 of 29

f9d95d7c-33a8-4ae1-90f0-86713b1f7e43

Page 38

1  to do that.
2      MR. VENNEBERG:  Okay.  And -- and there was somewhat
3  of an open-ended answer to that, that there may be other
4  documents, but I think you've clarified that there --
5      MR. SANDBERG:  Right.  If there are, they're going to
6  stay where they are.
7      MR. VENNEBERG:  Okay.
8  Q   Well, I guess I would go back to my point.  You have
9  the exhibits that were used at the hearing, right?
10 A   Correct.
11 Q   Okay.  And what I'd like you to do is answer which
12 persons were provided with compensation that they should
13 not have been provided with, in the Borough's view.  And
14 you can use the exhibits and feel free to rely on those to
15 the extent that you need to.
16 A   The Borough's view was as presented in the arguments
17 and the statements that were made at the ad hoc grievance
18 hearing.  And I don't want to expand on that.  If I were
19 to go through these now, I may provide additional
20 argument, or omit some arguments that were made at that
21 grievance hearing.  And part of my responses may be based
22 upon information that I have obtained subsequent to the
23 grievance hearing.  So, I'm not certain how to accurately
24 respond.
25 Q   Well, I think it's a pretty straight-forward

Page 39

1  question.  And I recognize that you made a presentation at
2  the -- at the grievance hearing, but I think I'm also
3  entitled to ask those questions today, to get your
4  testimony about that, under oath.  So, that's -- I would
5  again ask, you know, for an answer to that question.
6  A   My testimony under oath would have to be that the
7  position represented by the Borough was the position taken
8  in that hearing.
9  Q   Okay.
10 A   Now, what arguments I might make, based upon my
11 personal beliefs or conclusions, may go beyond the
12 arguments that were made by the Borough and may not
13 represent the position of the Borough.  I'm not authorized
14 to be the Borough's spokesman on all of these issues.  And
15 so, when you say, what is the Borough's position, the
16 Borough's position was as stated in the grievance hearing,
17 no more, no less, on these points.
18 Q   Okay.  Well, you testified earlier that it was the
19 position of the Borough at the grievance hearing -- I
20 understand this to be your testimony -- that there were
21 persons that were provided compensation that they should
22 not have been provided with.  And what I am asking is,
23 what persons are you referring to?  I think it's a pretty
24 straight-forward question.
25 A   Okay.  I'll give you an example of what I'm talking

Page 40

1  about with David Gutzman, the first one.  Initially, if
2  you look at -- oh, (word indiscernible) the right
3  exhibits.  If you look at the exhibit, page KB108, it says
4  you're hired at 74P.  And there's one issue about whether
5  he started at A or P.  But then, there appear to be a
6  number of changes in his compensation, going from 74P to
7  90O and then to 90H -- let's see, I think those are out of
8  order.  Yeah -- no, he went to 90H and then to 90O and
9  there are narrative descriptions on the bottom of those,
10 explaining the changes.  Now, the narrative descriptions
11 and the math don't track.  David Gutzman was a PERS
12 retiree, rehired status, prior to June 30, 1996.  As a
13 result, his -- his compensation, and the Code at the time,
14 called for his compensation to include -- at the time he
15 was hired -- to include pay plus a separate amount,
16 equivalent to the different between what the Borough's
17 required contribution of PERS would have been and what it
18 actually was, what it cost us to have him as an employee.
19 Now, what was done was that incremental amount was put
20 into the position pay, and they slid him over a certain
21 number of steps.  So, when he got a probationary
22 evaluation, instead of moving three percent of what should
23 have been his pay, he got two percent of what should have
24 been his pay, plus three percent of the incremental amount
25 represented by the contribution to PERS that was added

Page 41

1  into his salary.  The Code didn't call for it to be done
2  that way.  It called for the compensation to be outside
3  and then following adoption of the change in the
4  legislation, June 30, 2006, he was no longer entitled to
5  that money and his salary should have dropped.  But
6  because of the way it was done, it was not easy to
7  eliminate that additional component of his compensation.
8  And as a result, the Borough ended up keeping paying him
9  that amount.  There are a couple of errors in the way that
10 that was done.  One is giving him that incremental
11 adjustment on the PERS contribution amount, the other is,
12 there is no position in the non-rep pay resolution that
13 puts a -- creates a position at Grade 90.  It doesn't
14 match with the resolution, doesn't appear anywhere, and so
15 that provides a bust on the merit system adopted by
16 Resolution 1225.  Okay, some of what I have just described
17 was not explained in the same fashion in the grievance
18 arbitration.  These are defects shown from these documents
19 in the system, but to differentiate what the Borough
20 argued at the grievance and what I can tell you what's
21 wrong with these today-- you know, it kind of doesn't
22 matter what I'm telling you about them today, if we're not
23 going to be arguing that.
24     MR. SANDBERG:  Well, no, I'm sorry.  I understood his
25 question to be what people, and a person would be a Mr.

11 (Pages 38 to 41)

Exhibit C
Page 11 of 29

**Page 42**

1  Gutzman.
2      MR. VENNEBERG:  Right.
3      MR. SANDBERG:  You can say whatever you'd like about
4  him.  I just meant we weren't going to drag in 12 more job
5  -- you know, 12 more personnel files and say here you
6  go.....
7      MR. BRANDT-ERICHSEN:  Okay.
8      MR. SANDBERG:  .....these are all screwed up, too.
9  That's what I meant.  I'm sorry if I.....
10     MR. BRANDT-ERICHSEN:  Okay.
11     MR. SANDBERG:  .....if I didn't state that plainly.
12     MR. BRANDT-ERICHSEN:  I guess to respond, then, the
13 people would be --
14     MR. SANDBERG:  Because his question was, what people,
15 and my ans -- my response would have been, the ones who
16 are exhibits -- identified in the exhibits.
17     MR. VENNEBERG:  Right.
18 Q   But -- that's Mr. Gutzman, and then who else?
19 A   Mr. Hull, Mr. Paulsen, Amy Lervick, Angela Vanover,
20 Sharilyn Heath (phonetic), Brenda Bjork, Greg Bjork.  I
21 believe those are the only ones listed here.
22 Q   Okay.  Now, with respect to Mr. Gutzman, you had, I
23 think, started to explain what the difficulty was.  Was
24 there a particular provision of any policy or procedure,
25 code, that was violated by anything Ms. Thomas did with

**Page 43**

1  respect to Mr. Gutzman?
2  A   Well, that would be subject to argument.  Her
3  signature appears on forms approving the pay raises which
4  are in conflict, or not permitted by the Borough Code and
5  policies.
6  Q   And which --
7  A   Whether you characterize that as an action of Ms.
8  Thomas, or not, I think it's something people could argue
9  about.  I believe it was an action.....
10 Q   And likely will.
11 A   .....of Ms. Thomas.
12 Q   Okay.  Well, what I'm trying to find out is what is
13 it the Borough is saying that Ms. Thomas did wrong with
14 respect to these employees?  So, that's what I'm asking
15 about and trying to get to, maybe in a more round about
16 fashion than I should, but that's my -- that's what I'm
17 trying to inquire into.  And it's the Borough's position
18 that Ms. Thomas' signature on some of these forms
19 constitutes some sort of wrongdoing?
20 A   Negligent performance of her duties, if nothing else.
21 Q   Okay.  All right.  Which signatures for Mr. Gutzman
22 would constitute negligent performance of her duties?
23 A   Let's see.  One on KB113, one on KB112.  Primarily
24 those two.
25 Q   okay.  KB113 was also signed by Mr. Houts, is that

**Page 44**

1  right?
2  A   Let me get that in front of me again.  It appears to
3  be, yes.
4  Q   Okay.  Was Mr. Houts disciplined at all concerning
5  his signature on this form?
6  A   Not to my knowledge.
7  Q   Okay.  How about KB112.  Mr. Houts also signed that
8  form?
9  A   Yes, he did.
10 Q   Okay, was Mr. Houts disciplined for his signature on
11 that form that is KB112?
12 A   To the best of my knowledge, none of the individuals
13 whose signatures are on this form were disciplined for
14 their signatures being on the form.
15 Q   Okay.  Any other negligent performance of duties or
16 misconduct with respect to Mr. Gutzman?
17 A   By Ms. Thomas?
18 Q   Yes, according to the Borough.
19 A   In the documents that I'm looking at right here,
20 those are the two primary documents which -- which show
21 the situation.  But there are other documents in this
22 packet that are related to the issue, such as KB72, KB7 --
23 or, excuse me, KB74, KB75, KB76, KB77.
24 Q   What I'm asking about is the conduct or action of Ms.
25 Thomas that the Borough is alleging was somehow negligent

**Page 45**

1  performance of her duties.  And that's why I asked about,
2  you know, what forms show that.
3  A   Um-hmm.
4  Q   I mean, what she did that was supposedly either
5  negligent or wrong or inappropriate?
6  A   Are you wanting me to explain how it was negligent
7  and what the circumstances are?  Is that the question?
8  Q   Well, and I think it -- yes, with respect to KB113
9  and KB112 that you've testified about.....
10 A   Um-hmm.
11 Q   .....how was her -- how was the placement of her
12 signature on those forms negligent performance of her
13 duties?
14 A   My understanding is that the Borough Administration
15 relies upon the HR Manager, the HR function, to prepare
16 these forms in a manner that's consistent with the Code
17 and policies of the Borough.  And when they are not done
18 in that fashion, you know, the Finance Director, Manager
19 and whoever else looks to that HR person to know their
20 job.  And if they're preparing the forms in a way that is
21 in conflict with the requirements of the Borough Code and
22 the written published policies, then that constitutes a
23 negligent performance of their duties.  Irrespective of
24 whether errors may be made by other persons, you know,
25 their primary job is to make sure that the HR things are