Michael N. White
Friedman, Rubin & White
1126 Highland Avenue
Bremerton, Washington 98337
Telephone: (360) 782-4300
Facsimile: (360) 782-4358

Terry A. Venneberg
Attorney at Law
1126 Highland Avenue, Suite 101
Bremerton, Washington 98337
Telephone: (360) 377-3566
Facsimile: (360) 377-4614

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT KETCHIKAN

CAROLYN L. THOMAS,                          )
                                            )
        Plaintiff,                          )
                                            )
                                            )
vs.                                         )
                                            )
KETCHIKAN GATEWAY BOROUGH,                  )
and ROY ECKERT, in his individual           )
and official capacity;                      )
                                            )
        Defendants.                         )
_____     )   Case No. 5:06-cv-00001-JWS


OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Terry A. Venneberg
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

# **TABLE OF CONTENTS**

**Page**

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Standard for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.    Summary judgment is inappropriate on Thomas' claim under the
      Privileges and Immunities Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.   Summary judgment is inappropriate on Thomas' claim under the
      Contracts Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      A.    Thomas had a contractual relationship with the Borough . . . . . . . . . . . . . . . . . . 15

      B.    A change in the law by the Borough impaired the contractual
            relationship between Thomas and the Borough . . . . . . . . . . . . . . . . . . . . . . . . . 16

      C.    The impairment of contract by the Borough was substantial . . . . . . . . . . . . . . . . 17

III.  Estoppel requires the enforcement of Eckert's promise that Thomas could
      perform her job from a remote location and precludes the Borough from
      dismissing Thomas for violating the revised residency ordinance . . . . . . . . . . . . . . . . . 20

      A.    Promissory Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

            1.    The action induced amounts to a substantial change of position . . . . . . . . . 20

            2.    It was actually foreseen or reasonably foreseeable by the promisor . . . . . . . 21

            3.    An actual promise was made and itself induced the action or
                  Forbearance in reliance thereon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

            4.    Enforcement is necessary in the interest of justice . . . . . . . . . . . . . . . . . . . . 22

      B.    Equitable Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      C.    Quasi-Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abdul-Jabbar v. General Motors Corp.*
85 F.3d 407 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Allied Structural Steel Co. v. Spannaus*
438 U.S. 234 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dodge v. Board of Education*
302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ellingstad v. Department of Natural Resources*
979 P.2d 1000 (Alaska 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*General Motors Corp. v. Romein*
503 U.S. 181, 112 S.Ct. 1105 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Glover v. Sager*
667 P.2d 1198 (Alaska 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hicklin v. Orbeck*
437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*International Organization of Masters, Mates & Pilots v. Andrews*
831 F.2d 843 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jackson Sawmill Co. v. United States*
580 F.2d 302 (8th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*James v. State of Alaska*
815 P.2d 352 (Alaska 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Jamison v. Consolidated Utilities, Inc.*
576 P.2d 97 (Alaska 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Jones v. Central Peninsula General Hospital*
770 P.2d 783 (Alaska 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Keefe v. Clark*
322 U.S. 393, 64 S.Ct. 1072, 88 L.Ed. 1346 (1944) . . . . . . . . . . . . . . . . . . . . . . 18,19

*Municipality of Anchorage v. Schneider*
685 P.2d 94 (Alaska 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

1

**Page**

2

*Paul v. Virginia*
3          8 Wall. 168, 19 L.Ed. 357 (1869) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4     *Salem Blue Collar Workers Association v. City of Salem*
          33 F.3d 265 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14
5

*Sankovich v. Life Ins. Co. of North America*
6          638 F.2d 136 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

7     *Seltzer v. Cochrane*
          104 F.3d 234 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
8

*T.W. Electrical Service v. Pacific Electrical Contractors*
9          809 F.2d 626 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

10    *United Bldg. and Constr. Trades Council v. City of Camden*
          465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984) . . . . . . . . . . . . . . . . . . 11, 12, 14
11

*University of Hawaii Professional Assembly v. Cayetano*
12         183 F.3d 1096 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18, 19

13    *Walsh v. City and County of Honolulu*
          423 F.Supp.2d 1094 (D. Hawaii 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
14

*Warren v. City of Carlsbad*
15         58 F.3d 439 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996) . . . . . . . . . . . . . . . . . . . 9

16    *Zeman v. Lufthansa German Airlines*
          699 P.2d 1274 (Alaska 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
17

18

**Other Authorities**
19

Federal Rule of Civil Procedure 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
20

Leo Clarke, *The Contract Clause: A Basis for Limited Judicial Review of*
21         *State Economic Regulation*, 39 U. Miami L. Rev. 183 (1985) . . . . . . . . . . . . . . . . . . . 17

22    U.S. Constitution, Article I, Section 10, Clause 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

23    U.S. Constitution, Article IV, Section 2, Clause 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

24

25

26

27

28

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

Defendants Ketchikan Gateway Borough (hereinafter "Borough") and Roy Eckert have moved this court for summary judgment dismissing the claims brought by plaintiff Carolyn Thomas. Thomas opposes the motion as to the claims brought against the Borough for the reasons stated below.[1]

Factual Background

Carolyn Thomas has a long history of public service positions and in personnel positions. Exhibit 1, P50-53; Depo. of C. Thomas, pp. 10-12. Thomas was hired as the Human Resources Manager for the Ketchikan Gateway Borough on March 29, 2004. Exhibit 1, Depo. of C. Thomas, p.12. Ms. Thomas fully performed her duties and received exemplary evaluations of her performance. In April 2005, Borough Manager Roy Eckert rated her at 3.96 overall performance, where satisfactory = 2, above average = 3, and outstanding = 4. Exhibit 2, P59-62. Even at the time of Thomas' termination from the position, Eckert would have rated her performance as "Outstanding." *See* Exhibit 3, Depo. of R. Eckert, pp. 78-79; KB34.

In February 2005, Thomas told Eckert that she had family problems - a mother who was ill - that might require her to move to Oregon in June of that year. *See* Exhibit 4, Depo. of C. Thomas, pp. 16-17. In late April or early May 2005, during a discussion between Thomas and Eckert about her need to move to Oregon, Eckert proposed that, instead of leaving the employment of the Borough, Thomas continue to work for the Borough remotely from Oregon.

> [Eckert] said something to the effect that I wish you would just do - stay with your whole job. And I said, but really need to be in Oregon. And he said I know.
>
> And we discussed doing it remotely and what would work and what would not work. And we talked about it two or three or four times, and then it was determined that that was what I would do.

*See* Exhibit 4, Depo. of C. Thomas, pp. 15-16. In discussing how the job could be performed remotely, Eckert said to her:

> If you have a computer, a fax machine, and a phone you can perform – I think what he said was, you can be anyone but a surgeon and do it remotely.

---

[1] Plaintiff expects to enter into a voluntary dismissal of the claims brought against Roy Eckert, and therefore has made no argument in this opposition concerning those claims.

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

Exhibit 4, Depo. of C. Thomas, pp. 14-15.

Eckert authorized Thomas to move to Oregon and continue with her job. Exhibit 4, Depo. of C. Thomas, pp. 13-14. Ms. Thomas would travel to Ketchikan as needed, and at least quarterly, at her expense. Exhibit 5, Depo. of C. Thomas, p. 20.

Thomas moved to Oregon, set up an office, and performed her duties. Exhibit 6, Depo. of H. Rosendin, p.10. There is no dispute that Thomas continued to perform her duties for the Borough well from Oregon. Exhibit 6, Depo. of H. Rosendin, p.10. Thomas communicated by phone and e-mail on a daily basis and traveled to Alaska to perform face-to-face functions. Exhibit 6, Depo. of H. Rosendin, p.10. There was no difference between Thomas' performance in the position - other than not having daily face-to-face contact with co-workers - between when she worked at the Borough office and when she worked from Oregon. *See* Exhibit 6, Depo. of H. Rosendin, p.10.

There was no issue concerning Thomas' status as a Borough employee working in Oregon until, on July 15, 2005, the *Ketchikan Daily News* began to interview people about Ms. Thomas telecommuting. Exhibit 7, P8. On July 16, 2005, the *Daily News* ran an article critical of the Borough for not engaging in "local hire." Exhibit 8, P10. The newspaper followed the article with an editorial on July 20, 2005. Before he sensed the political winds changing, Eckert told the newspaper that "Things are working well" with the Human Resources Manager position. Exhibit 8, P10; Exhibit 9, Depo. of R. Eckert, p. 59.

In Eckert's deposition in this case he related that he did not "like to work with newspapers" and felt that it was a "pointed" interview. Exhibit 10, Depo. of R. Eckert, pp. 56-57. Eckert described the articles that were written as causing him grief and subjecting him to political pressure. Exhibit 10, Depo. of R. Eckert, p. 57.

Immediately following the unwanted publicity, the issue of Ms. Thomas' employment status was raised. Exhibit 11, Depo. of R. Eckert, p. 60; KB340-341. "At the Assembly meeting of July 18, 2005, several assembly members asked questions regarding the employment status of the Borough's Human

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

Relations Manager, Carolyn Thomas." Exhibit 11, KB340. Eckert told the Assembly that Thomas would be done with her work for the Borough by August 1, which was not what he had told Thomas. Exhibit 12, P87. On August 1, the Borough Assembly again discussed Thomas' employment status. Assembly Member George Lybrand "stated the issue of an employee of the Borough working out of state should not be a question for the Assembly. He said if there was no rule to the contrary then the Manager should make the decision. He added he did not believe it was appropriate for an employee to be allowed to work outside the Borough." Exhibit 13, P94. "Assembly member Tipton asked if the Manager would like to receive direction on policy from the Assembly. *Manager Eckert responded Assembly member Lybrand said it very well.*" *Id.*

On August 2, Thomas met with Eckert at the Borough offices. Thomas described the conversation in her August 5 letter to Eckert:

> On August 2, I spent approximately an hour and a half in your office talking with you. We discussed all kinds of borough issues, but nothing about my job. I finally asked you what the big hoorah was about my being in Oregon. You did not bring it up. You told me to think about coming back. I reminded you that I had moved with your permission and had I not had your permission to keep my job while living in Oregon, I would not have moved. You said, "You heard the Assembly. They are going to make you come back." I then read to you the responsibilities and authority of the Borough Manager. I told you that I worked for the Borough Manager, not the Borough Assembly and that my agreement had been with you. *You told me everything had changed.*

Exhibit 14, KB321 (emphasis added).

At no time during Thomas' employment with the Borough was her performance ever questioned, even after she began to perform her job remotely from Oregon. There was no issue concerning her effectiveness, either before or after her move out of state. The only issue *ever* raised concerning Thomas' status was her residency, and that was only *after* the issue was raised politically by the *Ketchikan Daily News* and the Borough Assembly. The record is clear that Eckert had no basis for terminating Thomas' employment in August 2005, two months into her remote work from Oregon. Eckert attempted to cajole Thomas into returning to Ketchikan in August, citing a "policy ... that all Borough employees will live in, reside in and work in the Borough, and will work in and on Borough property." Exhibit 15, KB 330. The policy of the Borough at the time, however, was quite opposite of

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

that cited by Eckert.  The Borough was concerned about terminating Thomas at that point, and any wrongful termination action that might be available to her.  Exhibit 16, Depo. of R. Eckert, pp. 66-68; Exhibit 11, KB341.

Thereafter, the Borough went about making what was promised to Thomas - allowance of her work for the Borough in Oregon - illegal.  The Borough code of ordinances at the time specifically provided that residency within the Borough was not a condition of employment.  Section 30.20.016, which was applicable at the time, states, in relevant part:

> **30.20.016.  Residency.**  Residency within the borough shall not be a condition of initial appointment or continued employment, except as otherwise required by state law, the borough Code of Ordinances or resolution; provided, however, that an employee's residence location shall not interfere with the daily performance of an employee's duties and responsibilities.

Exhibit 17, P180.  In the Agenda Statement for the September 6, 2005 Assembly meeting, proposed Ordinance No. 1369 was offered to the Assembly, in direct response to the concerns that had been expressed about Thomas' work situation.  Exhibit 18, P108.  The proposed residency ordinance stated as follows:

> Residency within the Borough shall not be a condition of initial appointment or selection as an employee.  However, all employees shall and as a condition of their continued employment, reside within the corporate boundaries of the Borough within three months after the later of October 1, 2005, or their date of hire.  The requirements of this section may be waived on the written recommendation of the Manager approved by motion or resolution of the Assembly based on a finding that such waiver is found to enhance the efficiency or effectiveness of the Borough work force.  Such recommendation shall set forth the justification for the exception and any conditions which apply.

Exhibit 19, P111.  On September 19, 2005, Ordinance No. 1369 passed the Assembly without debate. Exhibit 20, P143.[2]  The ordinance was effective October 4, 2005. Exhibit 22,  Depo. of R. Eckert, p. 8. Plaintiff's employment situation is conceded by Eckert to be a factor in the drafting and implementation of Ordinance No. 1369.  Exhibit 23, Depo. of R. Eckert, p. 12.   From the facts and evidence offered here, and certainly when the inferences are made in favor of Thomas, there can be little dispute that

---

[2]  Passage of Ordinance No. 1369 was on Eckert's "Office Project Task Tracking" list in 2005.  Exhibit 21, P183.

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

Ordinance No. 1369 was the direct product of Thomas' residency. On October 21, 2005, Ms. Thomas was fired based solely on the passage and implementation of the residence requirement of Ordinance No. 1369. Exhibit 24, Depo. of R. Eckert, p. 4; KB62.

### Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171 (1996). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

Special rules of construction apply to evaluating summary judgment motions: 1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; 2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and 3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Electrical Service v. Pacific Electrical Contractors,* 809 F.2d 626, 630 (9th Cir.1987). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of North America,* 638 F.2d 136, 140 (9th Cir.1981). The issue of material fact required by Rule 56 to entitle a party to proceed to trial need not be resolved conclusively in favor of the party asserting its existence; all that is required is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Id.* At this stage of the litigation, the judge does not weigh

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

conflicting evidence or make credibility determinations. These determinations are the province of the

fact finder at trial. *Id.; see also Abdul-Jabbar v. General Motors Corp.,* 85 F.3d 407, 410 (9th Cir.1996)

(on a motion for summary judgment, the court is not to weigh the evidence or determine the truth of the

matter, but only determine whether there is a genuine issue for trial).

<u>Argument</u>

I.  <u>Summary judgment is inappropriate on Thomas' claim under the Privileges and Immunities Clause.</u>

The Borough has argued that Thomas' claim under the Privilege and Immunities should be

dismissed on two grounds.  First, it is asserted that Thomas was not, in fact, dismissed because of her

residency, but because she did not "show up for work" in violation of a Work Location ordinance, KGB

Code 30.30.038.  Second, the Borough claims that, even if Thomas were fired based on her residency,

her Privileges and Immunities claim cannot survive because there is no "fundamental right" to public

employment.

As an initial matter, there is no question that Thomas was fired based on her failure to comply

with the residency ordinance enacted by the Borough Assembly.  Mr. Eckert was asked about this

directly in his deposition:

> Q.  (By Mr. Venneberg) Okay.   Why did you decide to terminate Ms. Thomas' employment?
>
> A.  Originally she had stated she was going to resign and move to Oregon, and then there was some disagreement as to what her status was.  But in the end we had offered her several chances to, you know, ***come back to the community***.  She chose not to do that, stated she would not come back, so we had no choice but to – you know, but to terminate the employment.
>
> Q.  Okay.  So, the reason for termination, then, was what?
>
> A.  ***Just a refusal to come back***.
>
> Q.  Okay.  And was that pursuant to any law or policy of the Borough?
>
> A.  Yes.  Yes. ***The Borough had an ordinance to that effect, that employees had to live inside the city – I'm sorry, inside the Borough***.

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

*See* Exhibit 24, Depo. of R. Eckert, p. 4 (emphasis added). Mr. Eckert's responses leave no doubt that Thomas was fired based on her residency outside of the Ketchikan Gateway Borough, rather than rules established concerning "Work Location."

The second argument offered by the Borough against the Privileges and Immunities claim - that there is no fundamental right under the Clause to direct public employment - is supported only by a Third Circuit decision which has not been adopted by either the Ninth Circuit or the U.S. Supreme Court. As the following will illustrate, this court should not use the decision to dismiss Thomas's Privileges and Immunities claim.

Article IV, Section 2, Clause 1 of the U.S. Constitution provides that "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." The purpose of this clause is,

> to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws. It has been justly said that no provision in the Constitution has tended so strongly to constitute the citizens of the United States one people as this.

*Hicklin v. Orbeck*, 437 U.S. 518, 524, 98 S. Ct. 2482, 2486-87, 57 L.Ed.2d 397 (1977), *quoting Paul v. Virginia*, 8 Wall. 168, 180, 19 L.Ed. 357 (1869).

This clause seeks to ensure the unity of the several states by protecting those interests of nonresidents which are "fundamental" to the promotion of interstate harmony. *United Bldg. and Constr. Trades Council v. City of Camden*, 465 U.S. 208, 218, 104 S. Ct. 1020, 1028, 79 L.Ed.2d 249 (1984). In order to assess a claim under the Privileges and Immunities Clause, it is necessary for this court to first determine whether the statute or ordinance at issue burdens such fundamental rights. *Camden*, 465 U.S. at 218, 104 S.Ct. at 1027. If it does, the court must next determine whether the reason for discriminating between residents and nonresidents is "substantial" and "whether the degree of discrimination bears a

Terry A. Venneberg
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

close relation to [that reason.]" *Camden*, 465 U.S. at 222, 104 S.Ct. at 1029.[3]  In *Camden*, the Court specifically held that the Privileges and Immunities Clause may be applicable to municipal residency ordinances.  465 U.S. at 214-15, 104 S.Ct. at 1024-25.

In seeking summary judgment dismissing Thomas' Privileges and Immunities claim, the Borough has argued that Thomas' interest in continuing to work in her position as Human Resources Manager was not a "fundamental" one protected by the Clause.  In support of this proposition, the Borough has cited to a case decided by the Third Circuit, *Salem Blue Collar Workers Association v. City of Salem*, 33 F. 3d 265 (3rd Cir. 1994), where the court held that "Direct public employment is not a privilege or fundamental right protected by the Privileges and Immunities Clause of Article Four." *Id.* at 270.  There is no indication, however, that either the Ninth Circuit or the U.S. Supreme Court would adopt this view. The Ninth Circuit has specifically held, consistent with the observation of the U.S. Supreme Court, that it is "unsettled" whether public employment is a fundamental right within the Privileges and Immunities Clause. *See International Organization of Masters, Mates & Pilots v. Andrews*, 831 F.2d 843, 846 (9th Cir. 1987), *citing Camden*, 465 U.S. at 219-20, 104 S.Ct. at 1028-29.  It is settled law that a nonresident's right to "ply [a] trade, practice [an] occupation, or pursue a common calling within the State" is a fundamental right protected by the Privileges and Immunities Clause. *Andrews*, 831 F.2d at 845-46, *citing Hicklin*, 437 U.S. at 524, 98 S. Ct. at 2487.  In the absence of any indication that either the Ninth Circuit or U.S. Supreme Court would agree with the Third Circuit's view on whether direct public employment is a fundamental right under the Privileges and Immunities Clause, this court should not apply that view to summarily dismiss Thomas' claim.

---

[3] This issue, whether there was a reason for the Borough to discriminate against Thomas based on her residency, is the subject of conflicting expert opinion.  Thomas' expert in human resources practices, Dr. Gregory Baxter, has offered the opinion that Thomas could have continued to perform in her position has Human Resources Manager for the Borough effectively from her remote location in Oregon.  *See* Exhibit 25.  The Borough's expert, Mr. Lee Wilson, has offered the opposite conclusion.  *See* Exhibit 26.  This presents a genuine issue of fact for the jury to consider at trial.

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

At least one District Court within the Ninth Circuit has implicitly rejected the view that a residency requirement for public employment does not implicate a fundamental right under the Privileges and Immunities Clause. In *Walsh v. City and County of Honolulu*, 423 F. Supp. 2d 1094 (D. Hawaii 2006), individuals whose applications with the City of Honolulu had been rejected challenged the constitutionality of Hawaii's statutory preemployment residency requirement for public employment. The defendants argued, in opposing Thomas' motion for preliminary injunction, that the "Thomas' Privileges and Immunities Claim fails because public employment is not a fundamental right." *Id.* at 1098. In granting the motion for preliminary injunction, the District Court found that plaintiffs were likely to prevail on the merits in the case, and offered the following commentary concerning the public employment aspect of the claim.

> The history of this statute makes it clear that the State has continued to perpetuate the original improper purpose. Although the State removed the one-year durational requirement from the statute, this Court cannot ignore the original and continuing impermissible purpose of the statute — to deter in-migration by controlling growth first through a three-year durational residency requirement, then through a one-year durational requirement, and finally through a pre-employment residency requirement for public employment. ... ***This is especially true since the impermissible purpose results in the denial of the opportunity to apply for public employment, which affects the opportunity to pursue a necessity of life, especially for those who are trained for work performed primarily by the government.***

*Id.* at 1106 (citation omitted) (emphasis added). The decision in *Walsh*, issued earlier this year, gives no indication that the view of the Third Circuit is being applied within the Ninth Circuit to public employment cases under the Privileges and Immunities Clause; on the contrary, the District Court in Hawaii emphasized the fundamental nature of the right to seek and hold public employment.

The distinction drawn by the Third Circuit in *Salem Blue Collar* between private and public employment for purposes of the Privileges and Immunities Clause has simply not been adopted by any other court, and is based on reasoning that can only be described as flawed. The right to public employment is not any less significant or valuable to those in the public sector than the right to private employment is to those in the private sector. In *Salem Blue Collar*, the court held that the distinction between public and private employment under the Privileges and Immunities Clause was supported by

Terry A. Venneberg
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

the decision of the U.S. Supreme Court in *Camden*, where an ordinance that required at least 40 percent of the contractors and subcontractors working on city projects to be Camden residents. The difference between the employees in *Salem Blue Collar* and the employees in *Camden* was that the latter were being paid by the City through private contractors, where the former were being paid directly by the City, without private contractors as a go-between. There is no logical basis for drawing a distinction between the two types of employees for purposes of the Privileges and Immunities Clause. In both situations, the employees were being paid by public money for doing public work. As was noted in the dissent in *Salem Blue Collar*, "*Camden*, rather than providing the basis for a restrictive ruling, is a case that significantly expanded the scope of the Privileges and Immunities Clause by applying it to restrictions placed on employment of nonresidents by private employers on publicly-funded work projects." 33 F.3d at 273. The dissent went on to add as follows:

> The *Camden* opinion suggests, even if it does not actually hold, that even a direct municipal residency requirement or preference for municipal employment will be subject to scrutiny under the Privileges and Immunities Clause. Although the Court did indeed comment that "[t]he opportunity to seek employment with [private contractors and subcontractors engaged in public works] is 'sufficiently basic to the livelihood of the Nation' ... as to fall within the purview of the Privileges and Immunities Clause even though the contractors and subcontractors are themselves engaged in projects funded in whole or in part by the city," ... this does not signify that when faced with a direct employment issue, the Court would accept the distinction made by the majority.

*Id.* at 276 (citation omitted).

There is no reason to conclude that either the Ninth Circuit or U.S. Supreme Court would agree with the decision of the Third Circuit in *Salem Blue Collar*. No District Court within the Ninth Circuit has applied *Salem Blue Collar* to dismiss a Privileges and Immunities claim; in fact, at least one District Court within the Ninth Circuit has rejected that argument. This court should do likewise.

II. Summary judgment is inappropriate on Thomas' claim under the Contracts Clause.

In seeking summary judgment dismissing Thomas' Contracts Clause claim, the Borough has failed to cite any authority or discuss any considerations that are to be weighed in evaluating such a claim. Instead, the Borough has simply argued that it and Mr. Eckert had the right to change their minds at any time concerning the terms and conditions of Thomas' employment, and there is therefore no

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

constitutionally protected interest at stake.[4]  As will be shown here, that argument does not address the issues presented by a claim under the Contracts Clause.

Article I, Section 10, Clause 1 of the Constitution provides in pertinent part that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts." In scrutinizing a claim under the Contract Clause, a court must first determine whether the law in question has in fact substantially impaired a contractual obligation. *General Motors Corp. v. Romein*, 503 U.S. 181, 112 S.Ct. 1105, 1109 (1992); *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). This inquiry has three elements: 1) whether there is a contractual relationship; 2) whether a change in the law impairs that contractual relationship; and 3) whether the impairment is substantial. *General Motors*, 112 S.Ct. at 1109.

A. Thomas had a contractual relationship with the Borough.

There is no question that Thomas was employed as Human Resources Manager by the Borough and therefore had a contractual relationship with the Borough. The terms of that contractual relationship were set out in the Personnel Code, which constituted the personnel policies of the Borough. The Alaska Supreme Court has held that when personnel policies create the reasonable expectation that employees have been granted certain rights, the employer is bound by the representations contained in those provisions. *Jones v. Central Peninsula General Hospital*, 770 P.2d 783, 788 (Alaska 1989).  One

---

[4]  The Borough's misreading of the claim under the Contracts Clause is illustrated by the facts that it cites concerning the claim:

> Viewing the facts most favorably to Thomas, the most Thomas could possibly prove is that:
>
> a) Eckert authorized Thomas to perform the KGB HR job remotely from Oregon; and
>
> b) Eckert (and/or the KGB Assembly) changed his mind and decided the job needed to be done at the Borough office building in Ketchikan.

Defendants' Motion for Summary Judgment, p. 17. The Contracts Clause claim has to do with passage of the residency ordinance, not with Mr. Eckert "changing his mind" concerning the location of Thomas' workplace. There is no evidence of an Assembly "change of mind" regarding the issue; there is no evidence of an Assembly approval - or action of any kind - concerning Thomas' workplace in Oregon. The facts cited by the Borough simply have nothing to do with the factors to be evaluated in considering a Contracts Clause claim.

Terry A. Venneberg
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

provision in the Personnel Code, KGB 30.20.016, concerned residency of employees and provided as follows:

> Residency within the borough shall not be a condition of initial appointment or continued employment, except as otherwise required by state law, the Borough Code of Ordinances or resolution; provided, however, that an employee's residence location shall not interfere with the daily performance of an employee's duties and responsibilities.

*See* Exhibit 17, P180. This provision was law in the Ketchikan Gateway Borough from the time of Thomas' initial employment with the Borough, until the effective date of Ordinance No. 1369, passed by the Borough on September 19, 2006. *See* Exhibit 20, P143. *See also Ellingstad v. Department of Natural Resources*, 979 P.2d 1000, 1008 (Alaska 1999) (Applicable laws in existence at the time of a contract's formation are incorporated into the contract and become part of it as though they had been expressly set forth in the contract.).

   B. A change in the law by the Borough impaired the contractual relationship between Thomas and the Borough.

Ordinance No. 1369 changed the language of KGB 30.20.016 concerning residency of employees from that cited above to the following:

> Residency within the Borough shall not be a condition of initial appointment or selection as an employee. However, all employees shall and as a condition of their continued employment, reside within the corporate boundaries of the Borough within three months after the later of October 1, 2005, or their date of hire. The requirements of this section may be waived on the written recommendation of the Manager approved by motion or resolution of the Assembly based on a finding that such waiver is found to enhance the efficiency or effectiveness of the Borough work force. Such recommendation shall set forth the justification for the exception and any conditions which apply.

*See* Exhibit 19, P111. This change in the law impaired the contractual relationship in place between the Thomas and the Borough.

In *University of Hawaii Professional Assembly v. Cayetano*, 183 F.3d 1096 (9th Cir. 1999), the Ninth Circuit noted that this "component of the substantial impairment test turns on whether the State has used its law-making powers not merely to breach its contractual obligations, but to create a defense to the breach that prevents the recovery of damages." *Id.* at 1102. The court went on to quote a commentator on the issue as follows:

Terry A. Venneberg
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

[T]he question should be whether the modification that the legislation imposes simply breaches the contract like any other unilateral attempt to modify an agreement, or whether the statute prevents or materially limits the contractor's ability to enforce his contractual rights. For example, legislation impairs a public contract only if it prevents or materially limits the remedies that would be available if the contract were between private parties.

*Id.* at 1103, *quoting* Leo Clarke, *The Contract Clause: A Basis for Limited Judicial Review of State Economic Regulation*, 39 U. Miami L. Rev. 183, 234 (1985).

The change in the law at issue in the present case falls squarely in the category of an impairment of contractual obligations. By enacting Ordinance No. 1369, the Borough did not breach its contract with the Thomas; the Borough owed Thomas no contractual obligation to keep its Personnel Code intact. What the Borough did do, however, was to create a defense to a claim of breach of contract by using its law-making powers to change the law. After the enactment of the ordinance, Thomas could not claim that the Borough had breached its contract with her when it fired her for not being a resident. By using its law-making powers to create a defense to Thomas' breach of contract claim, the Borough impaired its contract with Thomas, under the standard imposed by the Ninth Circuit in *Cayetano*.

C. The impairment of contract by the Borough was substantial.

In *Cayetano*, the Ninth Circuit held that a statute that allowed the State to postpone the dates on which state employees were to be paid constituted a substantial impairment of contract rights set out in the parties' collective bargaining agreement. The court explained its conclusion as follows:

Plaintiffs are wage earners, not volunteers. They have bills, child support obligations, mortgage payments, insurance premiums, and other responsibilities. Plaintiffs have the right to rely on the timely receipt of their paychecks. Even a brief delay in getting paid can cause financial embarrassment and displacement of varying degrees of magnitude.

183 F.3d at 1106.

As was the case in *Cayetano*, the present case involves a significant change in terms and conditions of employment. Thomas moved her workplace to Oregon under provisions of a law that allowed such an arrangement unless it "interfere[d] with the daily performance of [her] duties and

Terry A. Venneberg
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

responsibilities."[5]  She relocated with the expectation that she would continue to be employed and be paid by the Borough so long as she was able to perform her job satisfactorily.  Under the Alaska Supreme Court decision in *Jones*, this expectation was part of her employment contract with the Borough.  The change in the law by the Borough essentially pulled the rug from under Thomas, making it so that she could not perform her job remotely, no matter whether she was able to perform effectively.  This change did more than delay payment of her wages, as was the case in *Cayetano*; it eliminated her opportunity to continue to be employed under the terms of her contract.  There could not have been a more substantial impairment of her contractual relationship with the Borough.[6]

The authorities cited by the Borough do not support the proposition that Thomas' Contract Clause claim should be dismissed.  *Dodge v. Board of Education*, 302 U.S. 74, 58 S. Ct. 98, 82 L. Ed. 57 (1937), turns on whether the law at issue was "intended to create private contractual or vested rights," as opposed to "merely (declaring) a policy to be pursued until the Legislature shall ordain otherwise."  302 U.S. at 79.  In the present case, the provision of the Personnel Code that concerned residency of employees that was in effect at the time of Thomas' relocation was unquestionably part of her contract of employment with the Borough, under the Alaska Supreme Court's decision in *Jones*.  The holding in *Dodge* is therefore inapplicable to Thomas' claim.  In *Keefe v. Clark*, 322 U.S. 393, 64 S. Ct. 1072, 88 L. Ed. 1346 (1944), the Court addressed the question of whether the "obligation alleged to have been

---

[5]  Eckert testified that he did not terminate Thomas under the "interference with daily performance of duties and responsibilities" provision of the previous ordinance because Thomas had resigned from her position in June 2005.  *See* Exhibit 27, Depo. of R. Eckert, pp. 18-23.  This is, at minimum, the subject of a serious dispute between the parties.  Thomas denied that she resigned from her position in June 2005, *see* Exhibit 28, Depo. of C. Thomas, p. 73, and no other witness testified to such a resignation.  Considering that the Thomas kept the same job title and salary until she was terminated in November 2005, Eckert's claim that Thomas resigned in June 2005 is dubious at best.

[6]  In *Cayetano*, the Ninth Circuit also noted that, if each of the elements of a Contracts Clause claim were shown, the defendants would "bear the burden of proving that the impairment was reasonable and necessary..."  183 F.3d at 1106, *quoting Seltzer v. Cochrane*, 104 F. 3d 234, 236 (9th Cir. 1996).  In its summary judgment motion, the Borough made no argument and offered no facts illustrating that the residency requirement imposed by Ordinance No. 1369 was either reasonable or necessary.

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

impaired (had been) clearly and unequivocally expressed." 322 U.S. at 396-97. In the present case, the residency ordinance that allowed Thomas to work from a remote location was unambiguous; it specifically provided that residency "shall not be a condition of initial appointment or continued employment" unless residency "interfere[d] with the daily performance of an employee's duties and responsibilities." The holding of the U.S. Supreme Court in *Keefe* does not support dismissal of Thomas' claim.

The question of whether the Borough violated the Contracts Clause with respect to its change in the law on residency boils down to one central issue: Whether, by its legislative action, the Borough created a defense to an action that could have been brought by Thomas concerning her dismissal for failure to reside in the Borough. Under KGB 30.20.016, as it read at the time of Thomas' employment and her relocation to Oregon, Thomas unambiguously had the contractual right to perform in her job and *not* reside in the Borough unless residency "interfere[d] with the daily performance of [her] duties and responsibilities." If Thomas had been fired under that provision, the Borough would have had to have proved that Thomas' residency had "interfere[d] with the daily performance of her duties and responsibilities" for her termination to be sustained. The Borough was clearly concerned about a possible wrongful termination action by Thomas prior to the consideration and passage of the revised residency ordinance. *See* Exhibit 11, KB 341. By its legislative action, the Borough created a defense to such a claim; that is *precisely* what the Contracts Clause was designed to prevent. In *Cayetano*, the Ninth Circuit cited to a case decided by the Eighth Circuit, *Jackson Sawmill Co. v. United States*, 580 F. 2d 302 (8th Cir. 1978), where the court differentiated between a breach of contract and an impairment of contractual obligations. The Eighth Circuit held that the action at issue was not a constitutional impairment because "no attempt was made to use the law, federal or state, to repudiate a contractual obligation." 580 F.2d at 312. That is exactly what the Borough did here; it used the law to repudiate a provision of its contract with the Thomas, and created a defense to a breach of contract claim. That is an impairment of contract, and therefore a violation of the Contracts Clause.

Terry A. Venneberg
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

III.   Estoppel requires the enforcement of Eckert's promise that Thomas could perform her job from a remote location and precludes the Borough from dismissing Thomas for violating the revised residency ordinance.

At its heart, this case concerns the inconsistent positions taken by the Borough on the question of whether Thomas would be allowed to perform in her position from Oregon.  For purposes of this motion, it is taken as established that Borough Manager Roy Eckert promised Thomas that she could continue working as Human Resources Manager from Oregon.  It is established that Thomas was induced by that promise to continue working in her job from Oregon.  It is established that Eckert changed his position on whether Thomas could perform her job from Oregon, and sought and obtained a change in the law by the Borough Assembly concerning residency of employees.  It is established that Eckert used this change in the law to terminate Thomas, despite the fact that she was performing well in her position from Oregon.

A.  Promissory Estoppel

The well-established elements of promissory estoppel are as follows:

1)  The action induced amounts to a substantial change of position;
2)  it was either actually foreseen or reasonably foreseeable by the promisor;

3)  an actual promise was made and itself induced the action or forbearance in  reliance thereon; and

4)  enforcement is necessary in the interest of justice.

*Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1284 (Alaska 1985).  Each of these elements are satisfied by Thomas' claim.

1.  The action induced amounts to a substantial change of position.

Thomas moved to Oregon and set up a workplace there to perform her duties as Human Resources Manager based on the promise made by Eckert.  The Borough argues that Thomas was going to be moving to Oregon anyway, and that therefore no action was induced by the promise made by Eckert.  Thomas testified otherwise in her deposition.

Q. (By Mr. Sandberg) Maybe I'm wrong, but I thought earlier this morning you told me your mother's situation required you to be down in Oregon by the summer of 2005?

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

A. My husband has spent the last three summers in Oregon taking care of Mother and we would have continued that.

Q. So if Mr. Eckert hasn't authorized you to work remotely what would you have done?

A. I would probably have stayed in Ketchikan longer.

Q. If Mr. Eckert had not authorized you to work remotely would you still be working in Ketchikan today?

A. I can't answer that question. I truly can't. I can't give you a definitive answer on that. *I probably would still be in Ketchikan using my PTO, going back and forth.*

*See* Exhibit 29, Depo of C. Thomas, pp. 62-63. (Emphasis added) *See also* Exhibit 14, KB 321 ("I reminded you that I had moved with your permission and had I not had your permission to keep my job while living in Oregon, I would not have moved.") By these statements, Thomas makes clear that she likely would not have moved to Oregon absent the arrangement agreed to by Eckert. She has testified that, had Eckert not authorized her to work from the remote location in Oregon, she "probably would still be in Ketchikan using my PTO, going back and forth" from Ketchikan to Oregon. Construing the facts in favor of Thomas, as this court is required to do on summary judgment, Eckert's promise to allow her to work as Human Resources Manager from Oregon induced her to make that move, and set up a workplace there.

2. It was actually foreseen or reasonably foreseeable by the promisor.

There can be no question that Thomas' reliance on the promise that she could work from a remote location was actually foreseen by Eckert. The idea for Thomas to perform in her position from Oregon was proposed by Eckert. *See* Exhibit 4, Depo. of C. Thomas, pp. 14-15. Thomas moved to Oregon with the full knowledge of Eckert, and continued to perform in her position as Human Resources Manager from there. *See* Exhibit 4, Depo. of C. Thomas, pp. 13-17. Eckert worked with Thomas while she was in Oregon, and commented to the Ketchikan newspaper that the arrangement was working well. *See* Exhibit 8. Given Eckert's full knowledge and awareness of Thomas' work in Oregon, the Borough cannot claim that Thomas' reliance on his promise was not foreseeable.

Terry A. Venneberg
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

1    <u>3. An actual promise was made and itself induced the action or forbearance in reliance thereon.</u>

2    Construing the facts in favor of Thomas, Eckert promised Thomas that she could work in the

3    position as Human Resources Manager from Oregon.  In reliance on that promise, Thomas moved to

4    Oregon and set up a workplace there.

5    <u>4. Enforcement is necessary in the interest of justice.</u>

6    It was fundamentally unfair for the Borough to induce Thomas to believe that she would be able

7    to continue in her employment with the Borough, only to have Eckert "change his mind" and engineer

8    a change in the law that would result in her dismissal.  The "interest of justice" requires that Eckert's

9    promise to Thomas be enforced.

10    <u>B. Equitable Estoppel</u>

11    In addition to requiring that Eckert's promise to Thomas be enforced, estoppel also requires that

12    the Borough be precluded from enforcing its revised residency ordinance against Thomas.  This is

13    required by the doctrine of equitable estoppel.  In *Municipality of Anchorage v. Schneider*, 685 P.2d 94

14    (Alaska 1984), the Alaska Supreme Court held that an estoppel may invoked against a municipality when

15    the following elements are met:

16    (1) assertion of a position by conduct or word;

17    (2) reasonable reliance thereon; and

18    (3) resulting prejudice.

19    *Id.* at 97.  "A fourth element, most often explicitly stated in promissory estoppel cases, is that the estoppel

20    will be enforced only to the extent that justice so requires."  *Id.*, citing *Glover v. Sager*, 667 P.2d 1198,

21    1202 (Alaska 1983).

22    As noted above, in discussing application of the elements of promissory estoppel to this case, the

23    evidence shows that the Borough made a promise to Thomas - that she could continue in her position as

24    Human Resources Manager working remotely from Oregon - that Thomas reasonably relied on to her

25

26

27

28

Terry A. Venneberg
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

detriment.[7] After making the promise to Thomas, the Borough went back on its representation, enacting a law that was specifically directed at Thomas to make her employment situation illegal under Borough ordinances. Because Thomas had relocated in reliance on the promise that she could continue in her job while in Oregon, Thomas lost her job. All of the elements of equitable estoppel are present.

The situation found in *Schneider* resembles that faced by Thomas with respect to her employment by the Borough. In *Schneider*, the municipality made a promise to property owners that certain construction could be undertaken. After the promise, and actions taken by the property owners in reliance thereon, the municipality attempted to invoke a zoning ordinance that would have rendered the construction illegal. The Alaska Supreme Court found that estoppel was appropriate. In this case, the Borough made a promise to Thomas that she could work in Oregon, and in reliance in that promise, Thomas moved her residence and workplace. The Borough then undertook to make what it promised to Thomas illegal. Under *Schneider*, equitable estoppel is appropriate here as well.

C. Quasi-Estoppel

Quasi-estoppel appeals to the conscience of the court and applies where "the existence of facts and circumstances mak[es] the assertion of an inconsistent position unconscionable." *Jamison v. Consolidated Utilities, Inc.*, 576 P.2d 97, 102 (Alaska 1978). Trial courts in Alaska have been instructed to consider the following factors in determining whether the doctrine of quasi-estoppel is applicable:

> whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position; whether the inconsistency was of such significance as to make the present assertion unconscionable; and, whether the first assertion was based on full knowledge of the facts.

---

[7] In *James v. State of Alaska*, 815 P.2d 352 (Alaska 1991), the court noted that promissory estoppel and equitable estoppel were "related," describing the relationship as follows:

> The primary difference between promissory and equitable estoppel is that the former is offensive, and can be used for affirmative enforcement of a promise, whereas the latter is defensive, and can be used only for preventing the opposing party from raising a particular claim or defense. ... Despite this important difference, relevant analogies can be drawn between the two doctrines, since equitable estoppel involves proof of elements similar to the elements of a promissory estoppel claim.

*Id.* at 356, fn. 9 (citations omitted).

Terry A. Venneberg
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

1 | *Jamison*, 576 P.2d at 103.

2 |     In the present case, this court should invoke quasi-estoppel to preclude the Borough from using

3 | its new residency ordinance to fire Thomas.  It was unconscionable for the Borough to first promise

4 | Thomas that she could work in her position, and then pass a law ***directed at Thomas*** to make illegal the

5 | very conduct that they promised she could undertake.  The inconsistent position taken by the Borough

6 | certainly produced disadvantage to Thomas, causing to her choose between moving again or being fired.

7 | Conclusion

8 |     The legal arguments made by the Borough concerning Thomas' claims under § 1983 simply do

9 | not support dismissal of those causes of action.  The Borough has made one argument in support of

10 | dismissing the Privileges and Immunities claim - that direct public employment is not a fundamental right

11 | under the Clause.  There is no indication that the Ninth Circuit would adopt such a view; in fact, the

12 | opposite view has been taken within the circuit.  As to the Contracts Clause claim, the Borough failed

13 | to even take the court through the analysis to be applied.  The only argument offered by the Borough in

14 | support of dismissal of the Contracts Clause is that the Borough and Eckert could "change their minds"

15 | if they wanted; there is no indication that any court has ever used such reasoning to dismiss a Contracts

16 | Clause claim.  A proper analysis of the claim requires that the Borough's effort to dismiss be rejected.

17 |     The principles of estoppel certainly apply to preclude the Borough from making illegal the very

18 | arrangement that it promised would be allowed.  "Changes of mind" that operate to the detriment of

19 | promisees are exactly what estoppel claims are designed to address.  Here, Thomas has offered evidence

20 | that the Borough promised her she could work remotely from out-of-state in her position.  She has offered

21 | evidence that she relied on that promise, moving to Oregon with the expectation of continued

22 | employment and establishing an office there designed to meet the needs of her position.  She has offered

23 | evidence that the Borough changed its position on whether her out-of-state work would be allowed, and

24 | passed a law to make the arrangement illegal.  Drawing the inferences in favor of Thomas, ***as this court***

25 | ***is required to do on summary judgment***, there can be no question that Thomas' estoppel claims should

26 | be allowed to go forward.

27 |

28 |

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax

1       Plaintiff Carolyn Thomas requests that the Borough's Motion for Summary Judgment be, in all

2 respects, denied.

3       DATED this 11th day of December 2006.

4

5                         FRIEDMAN, RUBIN & WHITE
                        Attorneys for Plaintiff

6

7                         By:___ /s/Michael N. White_____

8                             Michael N. White
                            Alaska Bar No. 7910087

9

10       DATED this 11th day of December 2006.

11

12                         By:___ /s/Terry A. Venneberg_____

13                             Terry A. Venneberg
                            Alaska Bar No. 8706056
                            Attorney for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(253) 377-4614 fax