EXHIBIT 12



# KETCHIKAN GATEWAY BOROUGH

Regular Assembly Meeting                                                                July 18, 2005

Call to Order—Pledge of Allegiance—Roll Call

The regular meeting of the Ketchikan Gateway Borough Assembly was called to order at 5:30 p.m., Monday, July 18, 2005, by Mayor Salazar in the City Council Chambers.

PRESENT:    LYBRAND, TIPTON, THOMPSON, LANDIS, KIFFER, PAINTER, SHAY [via teleconference]

ABSENT:     NONE

The staff present included Manager Eckert, Assistant Manager Corporon, Attorney Brandt-Erichsen, Finance Director Houts, Public Works Director Voetberg, Principal Planner/Code Administrator Taylor, and Clerk Edwards.

Ceremonial Matters—*Presentations, Proclamations, Awards, Guest Introductions*

There were no ceremonial matters.

Citizen Comments—*Comments on any topic other than scheduled public hearings.*

Dick Coose, a citizen of Borough, said he had some concerns about the Leask Lakes issue to be considered under Resolution No. 1902. He said he had reservations about dealing with an organization such as the Southeast Land Trust and noted there was a possibility of the land being converted to private land and with a conservation easement the citizens lose the ability to tax it. He urged the Assembly to add language in the resolved section of the resolution to assure the easement would not restrict roads in it. Mr. Coose then referred to the Manager's Report in which it addressed the pending Downtown Development Plan. He urged the Assembly to be sure the public was involved in the plan development and be kept informed of the cost and timeframe of the work. Mr. Coose responded to Assembly questions.

Eric Muench, Leask Lake Users Coalition, discussed the Leask Lakes conservation easement and said it would not block any access across it, especially any extension of the road system. He explained the purpose of the Leask Lakes Users Coalition and assured the Assembly the easement would allow multiple-use of the land. Mr. Muench described the parcel that was selected for the easement and said its real importance to the community was its potential for future public roaded recreation access. Mr. Muench responded to Assembly questions.

Jack Lee, Leask Lake Users Coalition, also spoke in support of Resolution 1902 and emphasized the importance of the project to the community and ways the coalition would gather funding. Mr. Lee spoke of the economic benefits of the easement.

Jim Mitchel, Ketchikan Outdoor Recreation and Trails Coalition, advised the Assembly that KORTC voted to support Resolution No. 1902. He said the primary reason for support was the long-term recreation potential of the area, especially for trails. He provided an overview of trails through the area.

Eric Nichols, Alcan Forest Products, said Alcan Timber held stumpage rights to the property covered by the proposed conservation easement. He said for the next 8 years his company would be involved in the tract. He said his company was a stakeholder and noted there had been no negotiations yet. He said he was unsure what the conversation easement did, but observed the community needed road access off the island. Mr. Nichols listed a number of lakes on Revilla and Gravina Islands that were locked up for recreational use and said he was

unsure of the importance of the Leask Lakes areas. Mr. Nichols provided an overview of the work his company was going to do and how the road system would eventually be joined with the Shelter Cove road system. He emphasized the small amount of property that was privately owned in Alaska and said if more land was going to be locked up then other lands should be released.

Rob Shearer, George Inlet Lodge, said he wanted to discuss a letter written to Bruce Hoffman in which some statements were attributed to Mr. Shearer. Mr. Shearer explained the situation and said he was misquoted in the letter. Mr. Shearer said he had indicated the pending LTF in George Inlet would not have an effect on his operations. Mr. Shearer responded to Assembly questions and requested the letter be rescinded and his statements clarified.

Dave Rubin, a citizen of the Borough, requested the Borough create an historic overlay for the area north of the tunnel. He explained the historic overlay and noted the benefits to the community and residents of the area. He passed around some pictures of Juneau depicting the ways the community was trying to preserve its historic ambiance. He responded to Assembly questions.

Steve Seley, Pacific Log and Lumber, encouraged the Assembly to consider the ownership of property when it made decisions affecting the property. He said as long as an owner used his property within the laws that were in effect when the owner purchased the property, he should be allowed to do it. He said any change which would restrict the use should contain compensation for the owner. He noted he had recently purchased property on North Tongass that was zoned heavy industrial.

RECESS:

The meeting recessed at 6:37 p.m. and reconvened at 6:52 p.m.

Dave Weihler, a citizen of the Borough, thanked the Assembly for the job it was doing. He spoke in support of the Leask Users Coalition.

Public Hearings—*Procedure: Citizens will sign up on a sheet and testify in the order that they sign up. Citizens may present arguments in favor or in opposition; staff report update, if any; close the public portion of the hearing and the assembly deliberates and renders a decision on the matter at hand.*

Ordinance No. 1362 amending Title 60, Zoning, by amending Section 60.10.080, Supplementary Zone Regulations, to allow parking decks in required front yard setbacks of residential properties without a variance

There was no public testimony.

M/S Painter/Kiffer to adopt Ordinance No. 1362.

Assemblymember Tipton requested clarification of the section that allowed a staircase in the sideyard setback. Planner Taylor explained if there was an encroachment for a parking deck in the front yard the only thing being impacted was the street. He noted a stairway in the sideyard setback would affect a neighbor.

Upon roll call, the vote on the motion was:

YES:        SHAY, LANDIS, PAINTER, LYBRAND, THOMPSON, TIPTON, KIFFER

NO:         NONE

MOTION DECLARED CARRIED.

<u>Ordinance No. 1363 amending Title 60, Zoning, by adding Section 60.10.037, Neighborhood Residential Zone, amending Section 60.10.005, Establishment of Zones and Provision for Official Zoning Map; Section 60.10.025, Classification of Zones and Statement of Intent; Section 60.10.045, RH Zone; Section 60.10.096, Development Requirements for Twinhouse Dwellings and Accessory Uses; Section 60.10.100, Modular Buildings and Transportable Dwellings</u>

There was no public testimony.

M/S Landis/Painter to adopt Ordinance No. 1363.

Assemblymember Thompson asked about the five-acre size and Planner Taylor said the intent was placed in the ordinance to prevent spot zoning. He said the zone was created for new neighborhoods and larger developments. He listed some areas in the Borough which would benefit from the zone. Assemblymember Thompson expressed concern about wording in the ordinance which would require a subjective decision. Planner Taylor explained the wording referred to multi-family group housing and reflected language already in the code.

Upon roll call, the vote on the motion was:

YES:    PAINTER, TIPTON, SHAY, KIFFER, LANDIS

NO:     THOMPSON, LYBRAND

MOTION DECLARED CARRIED.

<u>Ordinance No. 1364 amending portions of Chapter 30.60 of the KGB Code regarding re-employment of retirees, making technical corrections, and providing for retroactive application</u>

There was no public testimony.

M/S Landis/Thompson to adopt Ordinance No. 1364.

Assemblymember Thompson said he distributed a memorandum regarding employee PTO accrual and how it was handled. He said he wanted to receive some answers to his questions before action was taken on the ordinance.

M/S Thompson/Kiffer to amend section 30.60.005(f) to change "vacation" to "PTO".

Manager Eckert responded to questions from the Assembly regarding the ordinance. Assemblymember Tipton suggested the ordinance be postponed so Assemblymember Thompson's questions could be answered and so staff could review any other questions the Assembly might have on the issue. Assemblymember Thompson also noted there was no definition of "immediate family."

M/S Tipton/Painter to postpone to no later than the second meeting in August.

Upon roll call, the vote on the motion to POSTPONE was:

YES:    LANDIS, LYBRAND, KIFFER, PAINTER, SHAY, THOMPSON, TIPTON

NO:     NONE

MOTION DECLARED CARRIED.

Scheduled Informational Reports and/or Presentations—*Reports on construction progress, financial status, presentations of budgets, audits, and reports or planning documents and related items.*

Board of Education Report

Board President Schafer announced that Superintendent Harry Martin was selected as "Superintendent of the Year for the State of Alaska." She advised the board approved $12,000 of funding for the Kanayama program which was one-half of the cost for the teacher. President Schafer said if the community was going to pursue 70/30 funding from the state for school CIP projects that the bond elections had to be done no later than the end of October 2006. President Schafer responded to Assembly questions.

Presentation by Laura Baker, Conservation Easements and Land Trust

Laura Baker provided a PowerPoint presentation to the Assembly and responded to questions.

Acceptance of Claims

M/S Thompson/Shay to accept the Ketchikan Gateway Borough claims for the period of June 29 through July 8, 2005 and wire transfers for the period of May 20 through June 30, 2005, in the amount of $1,069,531.23.

Upon roll call, the vote on the motion was:

YES:    LYBRAND, KIFFER, SHAY, TIPTON, LANDIS, PAINTER, THOMPSON

NO:     NONE

MOTION DECLARED CARRIED.

**Consent Calendar**—*Matters listed under the consent calendar are considered to be routine and will be enacted by one motion and one vote. There will be no separate discussion on these items. Platting or zoning items that are subject to court appeal may not be listed on the consent calendar. If the Mayor or an Assembly Member requests discussion, that item will be removed from the consent calendar and will be considered under Unfinished Business.*

Motion to approve the special meeting minutes of June 27, 2005; regular meeting minutes of July 5, 2005; and special meeting minutes of July 11, 2005, as presented

M/S Landis/Painter to approve the Consent Calendar as presented.

Assemblymember Tipton pointed out several minor corrections.

Upon roll call, the vote on the motion was:

YES:    THOMPSON, SHAY, TIPTON, LANDIS, LYBRAND, KIFFER, PAINTER

NO:     NONE

MOTION DECLARED CARRIED.

Unfinished Business

Transferred Consent Calendar—NONE

New Business

<u>Consideration of a three-year extension to an agreement with the City of Ketchikan for disposal of solid waste and collection of a non-areawide community solid waste disposal fee</u>

M/S Painter/Kiffer to authorize the Borough Manager to execute the attached three-year extension agreement between the City of Ketchikan and the Ketchikan Gateway Borough for disposal of solid waste and collection of a non-areawide community solid waste disposal fee.

Assemblymember Thompson requested to abstain from voting on the item because the contract directly affected the finances of his employer. Mayor Salazar ruled Assemblymember Thompson could abstain.

In response to Assemblymember Painter, Attorney Brandt-Erichsen explained the suits that resulted from implementation of the solid waste fee. Assemblymember Painter asked if Attorney Brandt-Erichsen had any concerns with the agreement and Attorney Brandt-Erichsen said legally he did not have any concerns about the agreement and noted it had worked fairly smoothly for the last six years. Assemblymember Painter expressed concern about the termination clauses contained in the agreement. Assemblymember Tipton noted the agreement had worked well so far and took care of a need. He encouraged the Assembly to adopt it without change.

Upon roll call, the vote on the motion was:

YES:      KIFFER, PAINTER, SHAY, TIPTON, LYBRAND, LANDIS

NO:       NONE

ABSTAIN:  THOMPSON

MOTION DECLARED CARRIED.

<u>Consideration of Resolution No. 1901 authorizing the acceptance of grant funds from the Legislature and allowing for their use for the building of two fire stations</u>

M/S Thompson/Shay to adopt Resolution No. 1901.

Upon roll call, the vote on the motion was:

YES:      TIPTON, PAINTER, LYBRAND, THOMPSON, LANDIS, KIFFER, SHAY

NO:       NONE

MOTION DECLARED CARRIED.

<u>Consideration of award of a contract to Control Contractors, Inc. for repairs and upgrades to the Ketchikan International Airport HVAC System</u>

M/S Tipton/Kiffer to authorize the Borough Manager to award a contract to Control Contractors, Inc. in the amount of $179,000 for repairs and upgrades to the Ketchikan International Airport HVAC system, establish a 10 percent contingency in the amount of $17,900 for a total project cost of $196,900 and authorize funding via a grant from the General Fund with the intention of seeking reimbursement from the State of Alaska.

M/S Tipton/Thompson to amend the motion to change the word "grant" to "loan" from the general fund.

Assemblymember Tipton stated the Assembly had previously made a grant to the airport project, along with a loan. He said no matter how it was viewed, the money had to be reimbursed and that was the reason he wanted it to be a loan.

Mayor Salazar asked if the project was eligible for PFC funding and Manager Eckert said he would check.

Assemblymember Thompson asked if this was the same work discussed last year and Assemblymember Tipton explained it expanded upon that work considerably. Manager Eckert noted the current work included not only work on the heating but also on the air conditioning. He also assured Assemblymember Thompson the work was within the expected costs. Airport Manager Carney explained the details of the work and the negotiations.

In response to Assemblymember Landis, Manager Eckert explained the funding for the airport terminal project. He said heating was not included in the original project. He went on to comment on the need for the air conditioning project and the funding. Assemblymember Tipton said the total terminal remodel project costs about $4 million; $180,000 was left and was earmarked for the generator, fuel tank and electrical panel. He said ultimately money was going to be needed from the Land Trust Fund for this item and the next agenda item.

Assistant Manager Corporon explained the convoluted process the Borough had embarked upon to finally get the $500,000 given by the Congressional Delegation to cover the extra costs due to the TSA renovations. He said the Borough may not have the time to wait for the AIP funding for the HVAC project due to the immediate need for the work. Assistant Manager Corporon explained he was not sure the current project would qualify for AIP funding because it did not go out to bid. Manager Eckert pointed out AIP funds were generally not allowed for projects inside the terminal.

Assemblymember Tipton expressed frustration at the time and process that it had taken to get the $500,000 appropriation.

A brief discussion was held between the Assembly and Airport Manager Carney about the air conditioning on the fifth floor. The discussion again turned to the $500,000 appropriation.

Assemblymember Landis spoke against the motion because the project was not on the CIP list, it was a sole source contract, and he did not believe the Borough would get reimbursed for the contract.

Upon roll call, the vote on the AMENDMENT was:

YES:    PAINTER, TIPTON, THOMPSON, SHAY, KIFFER, LANDIS, LYBRAND

NO:     NONE

MOTION DECLARED CARRIED.

Assemblymember Tipton said the terminal had a problem and it should be corrected once and for all.

Assemblymember Thompson noted his opposition to the sole source contract. He said the funding should be in place and the project re-advertised.

Assemblymember Tipton asked if there were two contractors in Anchorage that did this type of work and it was a choice of systems. Manager Eckert agreed.

Upon roll call, the vote on the motion was:

YES:    PAINTER, LYBRAND, TIPTON, KIFFER

NO:             SHAY, LANDIS, THOMPSON

MOTION DECLARED CARRIED.

Consideration of award of a contract to Pool Engineering Inc. for electrical upgrades and installation of a new emergency generator and fuel tank for the Ketchikan International Airport

M/S Kiffer/Tipton to authorize the Borough Manager to award a contract to Pool Engineering, Inc. in the amount of $250,000 for electrical upgrades and installation of a new fuel tank and emergency generator at the Ketchikan International Airport, establish a 10 percent contingency in the amount of $25,000 for a total project cost of $275,000.

Assemblymember Tipton asked if the motion passed if a budget amendment ordinance would be presented at the next meeting. Manager Eckert responded yes.

Assemblymember Lybrand asked if there were some modifications to be made to the project and Assistant Manager Corporon reported there were some minor changes that would be put in a change order early in the project. He said it would not be substantial. Assemblymember Lybrand asked if the letter received from Mr. Pool to hold his prices was adequate. Assistant Manager Corporon commented that since some modifications were going to be needed he felt something could be worked out with Mr. Pool. Assemblymember Lybrand said there may be a possibility Mr. Pool would not hold his prices due to price increases. Assistant Manager Corporon commented if the prices were not reasonable then the contract would not be awarded.

Assemblymember Painter said he did not like lumping several items together in one contract and stated he believed the current work was made up of three different jobs.

Assemblymember Kiffer asked if staff was comfortable with the conditions in Mr. Pool's letter. Assistant Manager Corporon said the prices would be reviewed for reasonableness while the change order was being negotiated. He said if it was unreasonable it would not be done.

M/S Thompson/Shay to amend the motion by adding: "subject to receipt of AIP funding from the State of Alaska.

Assemblymember Thompson said this would provide a funding source and while that was being resolved the change order and contract amounts could be finalized. Assistant Manager Corporon requested that it be subject to receipt of approval of AIP funding because it might be a while before the funds were actually received.

The motion now was: M/S Thompson/Shay to amend the motion by adding "subject to receipt of approval of AIP funding from the State of Alaska."

In response to Assemblymember Tipton, Assistant Manager Corporon said the bid originally opened in February 2005.

Upon roll call, the vote on the AMENDMENT was:

YES:        LYBRAND, KIFFER, SHAY, TIPTON, LANDIS, PAINTER, THOMPSON

NO:         NONE

MOTION DECLARED CARRIED.

Upon roll call, the vote on the motion was:

YES:        LANDIS, LYBRAND, KIFFER, PAINTER, SHAY, THOMPSON, TIPTON

NO:         NONE

MOTION DECLARED CARRIED.

[Clerk's Note: Motion reconsidered and amended later in the meeting.]

Consideration of award of a contract to Southeast Diesel & Electric for the North Tongass Fire Department generators

M/S Tipton/Thompson to authorize the Manager to award the purchase of two diesel generators to Southeast Diesel & Electric in the amount of $42,807.

Assemblymember Painter requested he be allowed to abstain from voting because he was the owner of Southeast Diesel & Electric. Mayor Salazar ruled Assemblymember Painter could abstain.

Assemblymember Lybrand said there was no local bidders preference submitted and there was no mention the generators would be awarded as one bid. Assistant Manager Corporon explained the bid package did not go out with any local bidder preference forms. He said he did not believe that had been done for a while; the code did not require it. He said all three of the responsive bidders were considered local bidders. Assistant Manager Corporon noted the intent was to award the two generators as a total package, the fire department had requested that the generators be split out. If they were too costly the department could purchase at least one of them.

In response to Assemblymember Thompson, Assistant Manager Corporon and Fire Chief Hull explained the generating needs of the fire department.

Assemblymember Tipton asked Mr. Painter [speaking from the podium as a citizen] if the generators were adequate for the needs of the department. Mr. Painter explained the reasons for the questions that were asked prior to the bid opening. Chief Hull answered additional questions about the generators, installation and moving to the new stations. Assemblymember Tipton encouraged staff to have the generators installed only one time.

Upon roll call, the vote on the motion was:

YES:        THOMPSON, SHAY, TIPTON, LANDIS, LYBRAND, KIFFER

NO:         NONE

ABSTAIN:    PAINTER

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1902 in support of the Ketchikan Gateway Borough co-holding a conservation easement with the Southeast Alaska Land Trust on the Leask Lakes Property

M/S Lybrand/Shay to adopt Resolution No. 1902.

Assemblymember Tipton expressed concern about there being so much land already tied up in Southeast Alaska. He added he believed in what was being attempted.

Assemblymember Landis said the outcome ought to be the will of the people and noted there was a diverse group of people interested in the easement. He encouraged passage of the resolution.

Assemblymember Kiffer commented there were few ways to hook up with the Shelter Cove road system and it was up to the Assembly to work with the groups to assure that road access.

Assemblymember Shay said he could not understand Mr. Nichols' opposition and said he was going to support the motion.

Assemblymember Painter said he supported the coalition's efforts and also agreed with comments made by different Assemblymembers. He expressed concern about some of the organizations involved and said the Borough, as co-holder of the easement, might be held liable in some way. He felt there was more involved than what was presented.

Assemblymember Thompson said if all the stakeholders could get together and work on ways to assure road access and resource extraction, he could not see anything in the resolution that did any harm.

Assemblymember Tipton asked if the resolution satisfied the protection for roaded access. Manager Eckert said he felt it did and noted some of the lands might be used for wetlands mitigation. Manager Eckert suggested an amendment to the resolution. He added he wanted to make it clear the Lands Committee was 100 percent in favor of making sure that Mr. Nichols and Alcan were made whole and were onboard with anything that was done.

M/S Thompson/Lybrand to amend Resolution No. 1902 by adding to the paragraph in Section 1: "and which is consistent with utility and roaded access through the area to Shelter Cove."

Mayor Salazar ruled the amendment would be a friendly amendment.

Assemblymember Tipton asked if with the negotiations would include the potential purchaser of the land and Manager Eckert replied yes. Assemblymember Tipton asked Manager Eckert if there was a need to do this action at this time versus letting the other party move ahead and deal with them later. Manager Eckert said currently the Users Coalition had an opportunity to get some grants and now was the time to apply for them in order to receive them in several years. Assemblymember Tipton said he agreed with Assemblymember Painter about potential liability.

In response to Assemblymember Thompson, Manager Eckert said if the Borough was not a co-holder of the easement its effectiveness at the table might be diminished.

Assemblymember Landis asked if there was a way for the Borough to minimize its risk as a co-holder and Manager Eckert said staff could assure the documents were written to exclude the Borough from the financial responsibilities of the easement. He assured the Assembly he would not sign any documents that obligated the Borough financially.

Upon roll call, the vote on the AMENDED MOTION was:

YES:    LYBRAND, THOMPSON, LANDIS, KIFFER, SHAY

NO:     TIPTON, PAINTER

MOTION DECLARED CARRIED.

Assemblymember Lybrand left the meeting at 8:52 p.m.

<u>Consideration of award of a contract to Pool Engineering Inc. for electrical upgrades and installation of a new emergency generator and fuel tank for the Ketchikan International Airport</u>

M/S Tipton/Thompson to reconsider the motion on the airport generator project.

Upon roll call, the vote on the RECONSIDERATION was:

YES:        SHAY, LANDIS, PAINTER, THOMPSON, TIPTON, KIFFER

NO:         NONE

ABSENT:     LYBRAND

MOTION DECLARED CARRIED.

The motion on the floor is:

M/S Kiffer/Tipton to authorize the Borough Manager to award a contract to Pool Engineering, Inc. in the amount of $250,000 for electrical upgrades and installation of a new fuel tank and emergency generator at the Ketchikan International Airport, establish a 10 percent contingency in the amount of $25,000 for a total project cost of $275,000, subject to receipt of approval of AIP funding from the State of Alaska."

Attorney Brandt-Erichsen said staff was requesting the Assembly to add on to the motion: "and to authorize the Manager to sign agreements with the state and FAA to secure the AIP funds for reimbursement on the generator project and come back with an appropriation if needed." He explained the state, as owner of the land, would execute an agreement with FAA for the AIP funds. He said because the Borough would be administering the project it would execute an agreement with the state. He said the agreement provided the Borough had a five percent match requirement. He said the Borough would put up $13,000; the state would put up $13,000 and the balance would be coming from AIP funds on a reimbursable basis. He said the Borough would construct the project and submit the bills for reimbursement. He said the money for the reimbursement would probably not come to the Borough until January. He said if an appropriation was needed to temporarily secure a loan from the Land Trust Fund then that appropriation would come to the Assembly.

M/S Shay/Tipton to add on to the motion: "and to authorize the Manager to sign agreements with the state and FAA to secure the AIP funds for reimbursement on the generator project and come back with an appropriation if needed."

Mayor Salazar ruled passage of the amendment would also pass the main motion on the floor.

Upon roll call, the vote on the AMENDMENT AND MOTION was:

YES:        PAINTER, TIPTON, THOMPSON, SHAY, KIFFER, LANDIS

NO:         NONE

ABSENT:     LYBRAND

MOTION DECLARED CARRIED.

Reports of Committees, Executive, Administrators

Manager's Report

    1. Fawn Mountain Elementary School
    I met with Don Lindsey, Dick O'Brien, Wayne Paulsen and several of the subcontractors at the school site on Wednesday, July 13, for a status update. Sheetrock work has begun at the school, interior painting has

Regular Assembly Meeting            EXHIBIT 12
July 18, 2005 – Page 10             Page 10 of 15

P00085

commenced and the final steel has arrived and is being erected. Electrical and plumbing work is on schedule, and some crews are working late evenings to ensure work is completed on or ahead of schedule.

2. Schoenbar Update

We have been meeting with the contractor at the site, and work has been progressing with the floor waxing and other issues. We have had a setback in one area that was unexpected, however. We received a letter from MCC's attorney, stating that the project manager is to not use their equipment such as manlifts, etc., to do inspections, and also is to refrain from direct contact with subcontractors. This is contrary to the building code provisions which state that equipment must be made available for inspections, and also we were in a staff meeting with Mr. McGraw when the electrical contractor said he would arrange a meeting between himself and Mr. Boyd, and Mr. McGraw not only voiced no objection, but stated that this was a good idea. The next day we received the letter from the attorney. Please see the attached correspondence from Mr. Boyd, Chuck Dearden, and the Schoenbar MCC Superintendent regarding this issue. We have responded to the attorney's letter and will keep you informed as to the outcome. Also, one last attachment references a proposed cost increase to the Borough "as a result of the project duration." Mr. McGraw also states that these increases are in part "due to overtime and inefficiency resulting from acceleration of the project at the direction of the Ketchikan Gateway Borough." One word sums it up for me - UNBELIEVABLE.

3. Ward Cove Sludge Facility

I am attaching pictures for your information which show the sludge facility at Ward Cove to be in operation. The bottom line is, we are making accepting sludge and dewatering it at the site, so the Mountain Point issues should now be considered resolved. This has been a long time coming, but it is now in operation.

4. Leask Lake Agenda Item

The Borough Lands Committee met on this proposal and sees this action as favorable based on the fact that this will work with the proposed Shelter Cove Road and has use as possible wetlands mitigation which is favorable to the State and the Feds. The Lands Committee sees no problem assuming that the arrangement is worked out between Cape Fox Corporation and Mental Health Land Trust and this will not have an adverse impact on any contract with Alcan. Mr. Nichols of Alcan Forest Products will be at the Assembly meeting to address any questions, as will Laura Baker and our staff. This should not be viewed as an anti-logging position - all groups have worked together in a friendly atmosphere to make this a multi-use project which supports timber harvest as well as provides for recreation use, but more importantly opening up the area for economic development through both timber and tourism, as well as making the Shelter Cove Road a better possibility. This project shows that there can be cooperation between all facets of a community without being adversarial.

5. Public Works Report

Attached you will find the Public Works Report, starting with a brief update on the North Tongass Fire Stations. Included in the Public Works report is a Borough Annexation update, which is critical that you read. Mr. Voetberg will be present to answer any questions regarding the report.

6. North Gravina

Attached you find a letter that we prepared and sent to the residents of Gravina regarding options for road and/or utility construction. This is not meant to be the final or only options, but merely a letter seeking input and to start the process. We are looking forward to some positive feedback from this dialogue.

7. Additional Items

At the last meeting I was given a list of items to be brought back to the Assembly. Some of these covered the Lewis Reef Road issue, and due to the special meeting on that subject staff has not been able to complete all items on the list in time for this report. I will have those items at the meeting and will discuss them at that time.

Also, I will be addressing the letter that Mr. Nichols addressed at the special meeting.

Mayor Salazar asked why the proposed service area boundaries on Gravina did not encompass all the private lots and Manager Eckert explained there was a major creek that would require a substantial bridge. He said it could be expanded in the future and the boundaries were set out just to get some dialogue started.

Mayor Salazar ask about the status of the personnel manager. Manager Eckert explained Ms. Thomas was working strictly on the union contracts. In response to Mayor Salazar, Manager Eckert said she was working full time to get those items done and he was in contact with her every day. Mayor Salazar asked how long Ms. Thomas would be working for the Borough and Manager Eckert said the plan had always been that when the contracts were done that was that. Mayor Salazar asked when they would be done and Manager Eckert responded August 1.

Assemblymember Painter said he wanted to assure that the KPU powerline crossing easement and road on Gravina Island were together. Manager Eckert said the electric line came out of the water on the sawmill property and was to follow the right-of-way of the Lewis Reef Road that went to the airport. He said staff would have to review the right-of-way plats to assure the road followed it. Assemblymember Painter said he wanted to assure the line and road were in the correct areas so corrective work was not needed. Manager Eckert said he wanted to make sure it all followed the Corps of Engineers permit.

Assemblymember Landis said if August 1 was Ms. Thomas' last day why was her position not being advertised. Manager Eckert said staff was evaluating its options on whether to hire someone part-time or to do it in-house. In response to Assemblymember Landis, Manager Eckert noted that several years ago there was not an HR director position. He noted it would be hard to find someone with issues such as consolidation looming. Attorney Brandt-Erichsen cautioned that if the Assembly was going to go into in depth questions about Ms. Thomas's status with the Borough, he suggested an executive session be held. Mayor Salazar said one could be scheduled for the next meeting.

Assemblymember Kiffer said he would like the Manager to contact the newspaper to request a clarification of a story that ran regarding the HR issue. He said he would not like to have the article be the last word on the situation.

Assemblymember Thompson and staff briefly discussed a photograph of pressed sludge. Assemblymember Thompson asked how the Schoenbar project was proceeding. He asked if the school would be available for move in on August 1. Manager Eckert said he visited the project and there had been a lot of progress made. He said some of the life/safety issues would probably not be complete in time for the substantial completion inspection on August 1. He discussed some minor items that needed to be done. Assemblymember Tipton said it appeared the school would not be ready for the district to move into on August 1. Manager Eckert said if the life/safety issues were not substantially complete he would not let the district move in. Assemblymember Tipton asked if there was concern that some items would not be complete if the district moved in and Manager Eckert responded yes.

Assemblymember Thompson pointed out a memorandum from the Planning Department to Manager Eckert regarding the LTF in Leask Cove and asked for an update. Manager Eckert explained the misunderstanding that occurred regarding the issue and said it was resolved. Assemblymember Thompson said he disagreed with the statement that the Planning Department only raised issues and took no opposition. He said he was pleased to know the Borough reversed its opposition. Assemblymember Tipton noted it would have been better if Mr. Nichols had talked with the Planning Department about the letter.

Manager Eckert pointed out the letter to the Gravina Island citizens was just to get people to the table and let them know the Borough was working on ways to fund the road. He said the Borough was going to push it hard. He added he and Director Houts were working on the Seley road proposal. Assemblymember Shay noted it was good the Borough was getting something started on the road and asked if the road was consistent with the Coastal Management Plan and Manager Eckert replied yes.

Assemblymember Thompson asked to be provided a list of communities in the unorganized borough and the amount of taxes they had in place to support their schools. He asked also the effect on the communities if the Borough annexation occurred. He listed Wrangell, Petersburg, Craig, etc. He noted the citizens of the Borough paid $8 million per year to support its schools. Manager Eckert said KGB received $31+ per person and in the unorganized borough the communities received $400+ per person.

In response to Assemblymember Painter, Manager Eckert reported he had contact with TF, Inc. and they were interested in purchasing the entire westside of Wards Cove. He told Assemblymember Thompson there was a purchase option in the agreement with TF, Inc. Mayor Salazar said there needed to be an agenda item at the next meeting about the cove because discussion was needed about the ferry system plans. Assemblymember Thompson wanted to know what the Borough was going to do about junked vehicles in the future. Mayor Salazar said the Borough had removed some of the properties from the sale and noted the map needed to be revisited.

Assemblymember Painter questioned the effectiveness of the junked vehicle program. He wondered if it was cost effective and discussed the issue with Manager Eckert. Manager Eckert said he would provide a report.

Assemblymember Kiffer asked about the 45 day period allowed to obtain financing on the upcoming Wards Cove land sale. He asked if the auctioneer made any other changes. Manager Eckert mentioned the realtor the auctioneer was using and said the auctioneer had to use a realtor and it was up to the contractor to pick its subcontractor. Manager Eckert said the time period for financing would be extended to 90 days. Attorney Brandt-Erichsen explained how the various issues would be resolved, i.e. financing period, deposit, and warranty deed. Assemblymember Tipton and Attorney Brandt-Erichsen briefly discussed the financing period.

Assemblymember Thompson asked about the letter from Anderes Oil. Attorney Brandt-Erichsen explained it was discussion between Anderes and Gateway that was not finalized. He added the parcel that was going to be used was not held back from the auction when the resolution on the lands passed.

Assemblymember Shay said the pictures in the report were helpful but said a caption would be nice.

<u>Staff Reports</u> [Airport—first meeting of month; Public Works—second meeting of month]

No questions were asked.

<u>Mayor's Report</u>

Mayor Salazar congratulated Superintendent Harry Martin on being named *Superintendent of the Year*.

<u>Committee Reports</u>

No reports were given.

**Assemblymembers' Comments**

Assemblymember Tipton congratulated Superintendent Martin and noted he had a number of trials and tribulations the last few years. He thanked David Means who was leaving the district office.

Assemblymember Tipton requested four hands to authorize the Manager to put a letter together for the Mayor's signature citing the events on the $500,000 appropriation and asking the state if there was a way to prevent this in the future.

AT LEAST FOUR ASSEMBLYMEMBERS AGREED.

Assemblymember Tipton requested the Assembly/School Board Liaison Committee finalize the CIP list with a recommendation for the Assembly and School Board to be voted upon. He added a date needed to be set for a bond issue to fund the projects. Assemblymember Thompson asked if the issue could be placed on the agenda for the next meeting for discussion.

AT LEAST FOUR ASSEMBLYMEMBERS AGREED.

Assemblymember Tipton said he wanted to assure there was an agenda item on the next meeting regarding the HR Manager.

AT LEAST FOUR ASSEMBLYMEMBERS AGREED.

Assemblymember Tipton said he appreciated the discussion on the conservation easement and said it would benefit people. He said he voted no because there were some unsettled issues, especially the area of liability.

Assemblymember Kiffer agreed with the comments regarding Superintendent Martin and Mr. Means. He thanked the school board for funding Kanayama. He said he enjoyed the debate on the Leask Lakes issue. He said there had to be ways to encourage private land ownership. He added there needed to be a way to prevent private landowners from blocking roads.

Assemblymember Thompson also agreed with the comments regarding Superintendent Martin and Mr. Means. He said he found the gentlemen to be very professional and were due congratulations. He congratulated the North Tongass Fire Department for receiving the $750,000 grant and building two fire stations. Assemblymember Thompson congratulated the Public Works Department for the successful testing and operation of the new sludge press. He said he talked with Director Houts regarding the school CIP and he understood toward the end of 2006 the one-half cent sales tax fund would have a balance of approximately $1 million. He noted there were about $2.1 million in projects on the CIP list and with a 70/30 match just about all the projects could be funded. He said at the next Assembly/School Board Liaison Committee meeting he was hoping a recommendation to take advantage of the 70/30 bonding would be brought forth.

Mayor Salazar said he thought the Borough lent the district some money and he thought it would be repaid through the sales tax fund.

Assemblymember Shay thanked Assemblymember Thompson for his questions about what the communities in the unorganized borough paid for education. He said he knew the answers would be interesting and would reflect a complete disregard for education funding. He added he was appreciative of Mr. Seley's comments regarding landownership. He thanked Assemblymember Tipton for his close reading of the packet.

Assemblymember Landis expressed his appreciation to everyone who participated in the discussions during the meeting. He reported the Manager Performance Committee met on July 12 and a meeting was scheduled for July 20 at 1:00 p.m. He said the Manager was invited to attend. Assemblymember Landis said each member was assigned a task and those items would be tackled at the July 20 meeting.

Assemblymember Painter offered kudos to Superintendent Martin and wished Mr. Means good luck. He said the Leask Lakes issue was a tough decision. He said he supported their endeavors but he was concerned about access. He noted the number of trails that could be accessed by boat or plane. He said there was so much of the area that was already locked up.

**Executive Session**—*Procedure: Motion is made and voted upon. If adopted, executive session is held. If necessary, action is taken in public session following the executive session. If there is more than one executive session topic, each topic will be handled completely separate from the other.*

No executive session was held.

Adjournment—*The meeting must adjourn by 10:00 p.m. unless that deadline is extended to 10:30 p.m. by a motion approved by a majority of the assembly members present. Any extension beyond 10:30 p.m. requires a unanimous vote of all assembly members present. If the meeting is not adjourned or extended prior to 10:00 p.m., or such extended time as has been set, the meeting shall automatically recess at that time and shall be reconvened at 5:30 p.m. the following day.*

The meeting adjourned at 9:43 p.m.

_____
Borough Mayor

ATTEST:

_____
Borough Clerk

**APPROVED:** August 1, 2005.