EXHIBIT 13

# KETCHIKAN GATEWAY BOROUGH

<u>Regular Assembly Meeting</u>                                                             <u>August 1, 2005</u>

Call to Order—Pledge of Allegiance—Roll Call

The regular meeting of the Ketchikan Gateway Borough Assembly was called to order at 5:30 p.m., Monday, August 1, 2005, by Mayor Salazar in the City Council Chambers.

PRESENT:    LYBRAND, TIPTON, THOMPSON, LANDIS, KIFFER, PAINTER, SHAY

ABSENT:     NONE

The staff present included Manager Eckert, Assistant Manager Corporon, Attorney Brandt-Erichsen, Finance Director Houts, Public Works Director Voetberg, Property Manager Machado, North Tongass Fire Chief Hull and Clerk Edwards.

**Ceremonial Matters**—*Presentations, Proclamations, Awards, Guest Introductions*

There were no ceremonial matters.

**Citizen Comments**—*Comments on any topic other than scheduled public hearings.*

Linda Randall, chair of the South Tongass Service Area Board of Directors, urged the Assembly to approve the proposed Memorandum of Agreement with the City of Saxman. She responded to questions from the Assembly.

Jim Hill, Assistant Fire Chief for the City of Ketchikan, invited the Assemblymembers to attend the upcoming Alaska Shield/Northern Edge exercises to be held on August 15 to 18. He provided information about the operations and purpose of the exercises and hinted that a number of dignitaries would be attending from out of state. Assistant Chief Hill distributed packets of information to the Assembly and requested the Borough allow its employees to be involved in the exercises.

Steven Alvarez introduced himself as an Americorp VISTA volunteer who had been working in Ketchikan for the past year on programs for youth. He was accompanied by Ty Rekke who explained the Ketchikan Youth Initiatives program and the local paintball organization that was being formed.

Rob Holston, a citizen of the Borough, expressed his concern about some of the terms of the upcoming auction for Wards Cove land. He stated: (1) the assessments were too high; (2) there was a problem with the way the assessments would be added together in the bulk sales; (3) the new property plats were not recorded; and (4) 90 days for financing was not adequate. Mr. Holston requested the Assembly amend the terms to alleviate the problems. He then stated DEC and EPA were writing new regulations for outfalls in the Wards Cove area and said this could have an impact on the properties in the auction. Mr. Holston responded to Assembly questions.

Terry Miller, editor of the *Ketchikan Daily News*, urged the Assembly to be cautious about going into executive session when discussing the policies for employment with the Borough because that would not be an appropriate topic for an executive session.

Dick Coose, a citizen of the Borough, commented on the report to the Assembly by the Manager Performance Committee. He suggested the Assembly use the Manager evaluation form created several years ago and the proposed tracking form be included as a part of the performance requirements for the Manager. Mr. Coose expressed concern about the suggestion for an executive Assembly committee to meet with the Manager. He said he hoped that would not exclude other members of the Assembly from talking with the Manager. Mr. Coose

then urged the Assembly to resolve the issues with Mr. Seley on the Lewis Reef Road and move forward with developing the road system on Gravina.

**Public Hearings**—*Procedure: Citizens will sign up on a sheet and testify in the order that they sign up. Citizens may present arguments in favor or in opposition; staff report update, if any; close the public portion of the hearing and the assembly deliberates and renders a decision on the matter at hand.*

There were no public hearings.

**Scheduled Informational Reports and/or Presentations**—*Reports on construction progress, financial status, presentations of budgets, audits, and reports or planning documents and related items.*

Board of Education Report

Board President Schafer thanked the Borough staff for arranging the walk-through of the Schoenbar project. She commented favorably on the amount of light in the building.

Acceptance of Claims

M/S Tipton/Kiffer to accept the Ketchikan Gateway Borough claims for the period of July 13 through July 22, 2005, and wire transfers for the period of July 1 through July 22, 2005, in the amount of $3,723,487.40.

Assemblymember Lybrand suggested staff separate out the checks which any member of the Assembly had an interest in so there was less confusion.

Assemblymember Painter requested that he be allowed to abstain from voting on Check No. 12822 payable to his company, Southeast Diesel & Electric, in the amount of $5,946.48. Mayor Salazar ruled Assemblymember Painter could abstain and there was no objection.

Assemblymember Thompson requested that he be allowed to abstain from voting on Check No. 12682 payable to his employer, Alaska Pacific Environmental Services, in the amount of $2,590.26. Mayor Salazar ruled Assemblymember Thompson could abstain and there was no objection.

Staff responded to questions from the Assembly.

Assemblymember Thompson pointed out some expenses paid for tennis workshop instructors and expressed concern about the costs. He requested an accounting of the Parks and Recreation expenses for classes and the revenues received from those classes. He said he had concerns about the Parks and Recreation workshop expenses being covered by fees for them. Assemblymember Thompson said he wanted to assure the fees would cover the expenses.

Upon roll call, the vote on the MOTION was:

YES:    SHAY, LANDIS, PAINTER [abstained on Check No. 12822], LYBRAND, THOMPSON [abstained on Check No. 12682], TIPTON, KIFFER

NO:    NONE

MOTION DECLARED CARRIED.

**Consent Calendar**—*Matters listed under the consent calendar are considered to be routine and will be enacted by one motion and one vote. There will be no separate discussion on these items. Platting or zoning items that are subject to court*

*appeal may not be listed on the consent calendar. If the Mayor or an Assembly Member requests discussion, that item will be removed from the consent calendar and will be considered under Unfinished Business.*

<u>Motion to approve the regular meeting minutes of July 18, 2005; as presented</u>

M/S Tipton/Painter to approve the Consent Calendar as presented.

Upon roll call, the vote on the MOTION was:

YES:    PAINTER, TIPTON, THOMPSON, SHAY, KIFFER, LANDIS, LYBRAND

NO:    NONE

MOTION DECLARED CARRIED.

**Unfinished Business**

<u>Transferred Consent Calendar—NONE</u>

<u>Ordinance No. 1364 amending portions of Chapter 30.60 of the KGB Code regarding re-employment of retirees, making technical corrections, and providing for retroactive application [postponed on July 18, 2005]</u>

The motions on the floor are:
    M/S Landis/Thompson to adopt Ordinance No. 1364
    M/S Thompson/Kiffer to amend (f) on page 4 to change vacation to PTO

Assemblymember Landis asked Assemblymember Thompson if the issue raised in the amendment had been resolved to his satisfaction. Assemblymember Thompson said he did not understand the differences, but he would not make an issue of it if the Assembly decided it was sufficient.

Assemblymember Shay asked if staff had responded to the questions contained in the memorandum Assemblymember Thompson had written and Assemblymember Thompson said he had not received a response but staff had recommended those issues be addressed in a separate ordinance. He noted Director Houts had told him the leave was carried on the books and amounted to about $700,000. Assemblymember Thompson expressed concern about a potential for a large cash drain on the Borough if there was a mass employee exodus.

Assemblymembers queried Manager Eckert and Attorney Brandt-Erichsen about leave accrual/payout for probationary employees and terminated employees. Attorney Brandt-Erichsen noted the emphasis of Ordinance No. 1364 was to add the section about employment of retirees and correction of references to sick and annual leave to PTO. He said if the Assembly wished to change the leave policies of the Borough they should be addressed in a separate ordinance that accounted for the necessary changes to collective bargaining units.

Upon roll call, the vote on the AMENDMENT was:

YES:    LANDIS, LYBRAND, KIFFER, PAINTER, SHAY, THOMPSON, TIPTON

NO:    NONE

MOTION DECLARED CARRIED.

Upon roll call, the vote on the AMENDED MOTION was:

YES:    LYBRAND, KIFFER, SHAY, TIPTON, LANDIS, PAINTER, THOMPSON

NO:            NONE

MOTION DECLARED CARRIED.

New Business

Assemblymember Lybrand requested the executive session regarding the human resources issues be moved to the current position on the agenda. He said it was going to be a long meeting, he had to travel the next day, and would be leaving the meeting at 10:00 p.m.

Mayor Salazar ruled the item would be re-positioned on the agenda. There was no objection.

Request for executive session to discuss the employment status of the Ketchikan Gateway Borough Human Relations Manager

Mayor Salazar said he did not believe an executive session was necessary because the discussion was going to center around the location of the job and who would be setting policy. Attorney Brandt-Erichsen said he tried to communicate the concerns he had at the last meeting in a confidential memorandum to the Assembly. He said if the memorandum provided the information that would have required an executive session then one was not necessary.

Assemblymember Lybrand stated the issue of an employee of the Borough working out of state should not be a question for the Assembly. He said if there was no rule to the contrary then the Manager should make the decision. He added he did not believe it was appropriate for an employee to be allowed to work outside the Borough.

M/S Shay/Landis to recess into executive session for the purpose of discussing human resources functions pursuant to KGB Code Section 5.31.080, matters the immediate knowledge of which may adversely effect the finances of the Borough and potential claims in the event that the Borough were to take adverse employment action regarding Ms. Thomas.

Upon roll call, the vote on the MOTION was:

YES:           NONE

NO:            THOMPSON, SHAY, TIPTON, LANDIS, LYBRAND, KIFFER, PAINTER

MOTION DECLARED FAILED.

Assemblymember Tipton asked if the Manager would like to receive direction on policy from the Assembly. Manager Eckert responded Assemblymember Lybrand said it very well.

Introduction of Ordinance No. 1365 adopting the North Gravina Area Plan, Central Gravina and Airport Reserve Area Plan, and the Clam Cove and Blank Inlet Area Plan

M/S Landis/Kiffer to introduce Ordinance No. 1365, cause it to be published and set a public hearing for August 15, 2005, in the City Council Chambers.

M/S Thompson/Lybrand to postpone the public hearing to the first meeting in September.

Assemblymember Thompson commented there was a lot of information involved and two weeks was not enough time to review it all.

Regular Assembly Meeting
August 1, 2005 – Page 4

EXHIBIT 13
Page 4 of 14

P00094

MOTION TO POSTPONE THE PUBLIC HEARING TO THE FIRST MEETING IN SEPTEMBER [September 6] DECLARED CARRIED VIA VOICE VOTE.

Assemblymember Tipton clarified the public hearing was postponed to September 6 and the other Assemblymembers agreed.

[Clerk's Note: The intent of the motion was to introduce Ordinance No. 1365, cause it to be published and set a public hearing for September 6, 2005, in the City Council Chambers.]

Introduction of Ordinance No. 1366 repealing and re-enacting Chapter 5.37 of the KGB Code regarding conflicts of interest

M/S Thompson/Painter to introduce Ordinance No. 1366, cause it to be published and set it for a public hearing on August 15, 2005, in the City Council Chambers.

Assemblymember Lybrand noted the City of Ketchikan's conflict of interest ordinance stated the only business a council member could conduct with the city was through a sealed competitive bid. He felt this was adequate.

Attorney Brandt-Erichsen said in compiling the ordinance he tried to provide a wide variety of information from other communities and selected items from them that were common among a number of communities and selected items that would address the dissatisfaction the Assembly had with the current code. He said he tried to put forth fairly clear rules and procedures to deal with questions. He said the Assembly could set the ordinance for a work session for a more detailed discussion.

A number of Assemblymembers commented on items in the proposed ordinance and the need for a work session.

M/S Tipton/Landis to postpone Ordinance No. 1366 to a special meeting/work session to be scheduled for Tuesday, September 6, at 4:30 p.m. preceding the regular meeting of the Assembly and limit the meeting to 50 minutes.

Assemblymember Landis suggested Assemblymembers provide Attorney Brandt-Erichsen with their written concerns prior to the meeting.

Upon roll call, the vote on the POSTPONEMENT was:

YES:    SHAY, LANDIS, PAINTER, LYBRAND, THOMPSON, TIPTON, KIFFER

NO:    NONE

MOTION DECLARED CARRIED.

Consideration of Ordinance No. 1367 authorizing the issuance of general obligation bonds (payable also from sales tax revenue) in an amount not to exceed $1.1 million to finance a plan of capital improvements to school facilities of the Borough; and providing for the submission to the qualified voters of the Borough at the regular election to be held on October 4, 2005, of a proposition approving this ordinance and ratifying the authorization of said bonds

M/S Thompson/Kiffer to introduce Ordinance No. 1367, cause it to be published and set a public hearing on August 15, 2005, in the City Council Chambers.

Assemblymember Tipton said he thought the $250,000 for FF&E for Schoenbar was part of the school budget. Director Houts said he did not believe it was in the school budget, but he would check it.

Assemblymember Tipton asked about the effect of changing the bond term from 20 years to 10 years. He noted the Point Higgins School would probably need some work at a future date. Director Houts said the fund balance would be preserved if the bonds went for 20 years. Assemblymember Tipton asked the difference between the fall protection line items on the CIP list. Director Houts said he and Superintendent Martin attempted to separate the fall protection from the playground equipment in order to place the safety issue above the line. Assemblymember Tipton asked if the vehicles were CIP items or operating items. Assemblymember Thompson said they were necessary equipment for the schools. Director Houts interjected the vehicles would not be eligible for bonds because of their limited life.

Assemblymember Landis pointed out the wording of the proposition did not address the one-half percent sales tax fund. He expressed concern about the voters' reluctance to pay for more bonds.

M/S Tipton/Landis to amend the proposition language in Ordinance No. 1367 by inserting the words after (payable also from "the existing one-half of one percent" sales and use tax revenues).

AMENDMENT DECLARED CARRIED VIA VOICE VOTE.

Upon roll call, the vote on the AMENDED MOTION was:

YES:        PAINTER, TIPTON, THOMPSON, SHAY, KIFFER, LANDIS, LYBRAND

NO:         NONE

MOTION DECLARED CARRIED.

<u>Consideration of Resolution No. 1904 adopting plans, specifications and the engineer's report for the Old Homestead Road paving and sidewalk project and setting a time for a public hearing to establish a special assessment district</u>

M/S Painter/Kiffer to adopt Resolution No. 1904.

M/S Tipton/Painter to amend Section 3 of Resolution No. 1904 by adding the following to the end of the last sentence: ", subject to a more defined statement from the owner of the Homestead property regarding residential development that may result in a change to the allocation of special assessment costs."

Upon roll call, the vote on the AMENDMENT was:

YES:        LANDIS, LYBRAND, KIFFER, PAINTER, SHAY, THOMPSON, TIPTON

NO:         NONE

MOTION DECLARED CARRIED.

Assemblymember Lybrand expressed concern about using the average daily traffic to apportion the assessment. He felt it would set a bad precedence for future assessment districts.

Manager Eckert stated if the issue was postponed the Borough might lose the paving coordination with the contractor.

Assemblymember Lybrand reiterated his concerns and Attorney Brandt-Erichsen said the Borough code did not prescribe a specific method of determining the assessment and the statute addressing specific assessment districts did not specify a method.

Clay Keene, attorney for Mr. Arntzen, stated his client accepted the methodology. He said the only concern the Arntzens had was being assessed for more lots than they planned to development. He indicated the amended language would satisfy the Arntzens.

In response to Assemblymember Tipton, Attorney Brandt-Erichsen described several different methods of calculating the distribution of an assessment. He added that analytically, if a reasonable case could be made for a methodology then it was a defensible method.

In response to Assemblymember Thompson, Director Voetberg said, given the limitations on the use of the road and the configurations of the lots that would benefit, it made sense to use traffic. He said if frontage was used, the school district's portion would be the width of the road, the proposed church would have several hundred feet, and the proposed subdivision would have several hundred feet. He noted the major user would pay the smallest amount. He said the most straight-forward method was the average daily traffic.

In response to Assemblymember Landis, Manager Eckert said the paving at the school was scheduled for early fall. He said the school was scheduled for completion around December 1. Assemblymember Landis questioned the process and Attorney Brandt-Erichsen explained the next step would be a public hearing and the project must be supported by those who would bear more than fifty percent of the cost. He assured Assemblymember Landis the Assembly would have future opportunities to determine whether to go forward with the project.

Attorney Brandt-Erichsen and Assemblymember Tipton discussed the opportune time to introduce an ordinance to appropriate funds for the project. Attorney Brandt-Erichsen commented an ordinance may not be needed.

Upon roll call, the vote on the AMENDED MOTION was:

YES:    KIFFER, SHAY, TIPTON, LANDIS, PAINTER, THOMPSON

NO:     LYBRAND

MOTION DECLARED CARRIED.

RECESS:

The meeting recessed at 7:16 p.m. and reconvened at 7:35 p.m.

<u>Consideration of a Memorandum of Agreement between the Borough and the City of Saxman for providing EMS services within the City of Saxman</u>

M/S Painter/Landis to authorize the Borough Manager to approve a Memorandum of Agreement with the City of Saxman allowing the South Tongass Service Area to provide emergency medical services within the City of Saxman.

Upon roll call, the vote on the MOTION was:

YES:    THOMPSON, SHAY, TIPTON, LANDIS, LYBRAND, KIFFER, PAINTER

NO:     NONE

MOTION DECLARED CARRIED.

EXHIBIT 13
Page 7 of 14

Regular Assembly Meeting
August 1, 2005 – Page 7

<u>Consideration of an amendment to the Jenson Yorba Lott, Inc. contract for professional architectural and engineering services for the Schoenbar Middle School Renovations</u>

M/S Thompson/Kiffer to authorize the Borough Manager to sign Amendment No. 1 to the Jensen Yorba Lott, Inc. contract to add an additional $50,000 to their contract.

Assemblymember Tipton asked for a clarification of the billings from Jenson Yorba Lott, Inc. on the project and Manager Eckert said it would be provided.

Director Houts responded to questions about the architect's billings.

Upon roll call, the vote on the MOTION was:

YES:        KIFFER, THOMPSON, PAINTER, SHAY, TIPTON, LYBRAND, LANDIS

NO:         NONE

MOTION DECLARED CARRIED.

<u>Report to the Assembly by the Manager Performance Committee</u>

M/S Landis/Painter to accept the report and provide direction to the Manager that was contained in the report.

Assemblymember Thompson expressed concern about the exclusion of new Assemblymembers from the executive team. Assemblymember Tipton said most new people would not be up to speed on issues and he felt it would hinder the process of the group. He explained the intent was to assist communication between the Manager and Assembly.

Upon roll call, the vote on the MOTION was:

YES:        TIPTON, PAINTER, LYBRAND, THOMPSON, LANDIS, KIFFER, SHAY

NO:         NONE

MOTION DECLARED CARRIED.

<u>Consideration of award of Fawn Mountain Sports Field and Track design work to R & M Engineering-Ketchikan</u>

M/S Painter/Landis that the Assembly award the Fawn Mountain Sports Field and Track design work to R&M Engineering-Ketchikan in the amount of $25,612, authorize funding from the Recreation Capital Improvement Fund, account 712-10-000-6540, and direct the Borough Manager to execute the contract documents on behalf of the Borough Assembly.

Assemblymember Lybrand commented that the proposals were close in price. Several members questioned the method of selection and Assistant Manager Corporon explained the process.

Upon roll call, the vote on the MOTION was:

YES:        SHAY, LANDIS, PAINTER, THOMPSON, TIPTON, KIFFER

NO:         LYBRAND

MOTION DECLARED CARRIED.

Consideration of Change Order No. 1 to Bicknell, Inc. contract for North Tongass Fire Station #8 Sitework

M/S Painter/Thompson to authorize the Borough Manager to approve Change Order No. 1 to the Bicknell, Inc. contract for the North Tongass Fire Station No. 8 Sitework in the amount of $56,900 and to extend the completion date for the additional work to September 15, 2005.

Assistant Manager Corporon responded to Assemblymember Tipton's questions. Fire Chief Hull explained the plan was to incorporate the deleted work if additional funds became available. He said the work would provide a facility for tanker water.

Assemblymember Thompson requested a breakdown of the project status for the two fire stations. Assistant Manager Corporon said he would meet with Chief Hull and provide the information.

Upon roll call, the vote on the MOTION was:

YES:    PAINTER, TIPTON, THOMPSON, SHAY, KIFFER, LANDIS, LYBRAND

NO:     NONE

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1903 authorizing the Borough Manager to dispose by sale certain portions of real property in west Wards Cove to a LLC to be formed by Ted Falconer

M/S Tipton/Kiffer to adopt Resolution No. 1903.

Assemblymember Painter noted he was skeptical about the offer. Manager Eckert said it was a serious offer and he was requesting a 30-day period in order to finalize all the details of the proposed transaction. He noted the purchaser would have to honor all leases.

Assemblymember Landis also expressed concern about the offer and cited the delays in opening the veneer mill as an example. Manager Eckert said the offer to sell the property had been advertised on the Northwest coast and no others were received. Assemblymember Landis continued to express concern.

Assemblymember Kiffer said the offer did not contain much information and Manager Eckert said the Borough was attempting to sell land that would be expensive to develop.

Assemblymember Lybrand stated the deposit should be larger than $50,000.

Assemblymember Tipton reviewed the history of the property and emphasized the Borough was expending money for holding costs and pointed out if the land was sold then the Borough would realize tax revenues from it. He said the Borough had a total investment of roughly $21.5 million. He noted the rate of return from the bankruptcy would be approximately 77 percent. He suggested direction be given to the Manager and Attorney to go back and enter into negotiations with the proposer. He said if the Assembly felt the deposit should be one percent then direction should be provided by the Assembly. He said the process should move forward so the Borough could get out from under the burden.

Assemblymember Thompson said the promissory note made no sense to him. He said he researched the value of the land and said the total assessment was $21,333,300. He said that would amount to approximately 40 cents on the dollar for the property. Manager Eckert said if only the amount the Borough paid for the land was considered, then the Borough would be coming out to the good. Assemblymember Thompson contended the

value of the land was the primary consideration. The discussion continued on whether the offer was a good one or not and Manager Eckert responded to questions from the Assembly.

M/S Tipton/Lybrand to postpone action on this item until the August 15 meeting, allow the Manager and Attorney to discuss further terms and conditions and request Mr. Falconer to be here at the August 15 meeting.

Manager Eckert continued to respond to questions about the offer.

Assemblymember Shay commented a lot of the money paid out come directly back to the community. He added he had met with Mr. Falconer in Gig Harbor and was impressed with his knowledge of the industry. He emphasized if the sale went through the community would realize revenue from the taxes on the property and get out of the liability for the dam and pipeline.

Assemblymember Thompson argued against postponement and said a counteroffer should be made to Mr. Falconer. He reiterated his concerns about the offer and said he believed the property was worth more than $9 million.

Assemblymember Landis said if the Borough could receive $9 million for the property it ought to take it. He said it would be helpful if more information could be received from the proposer.

Discussion continued on a visit from Mr. Falconer and concern about the validity of the offer. Assemblymember Thompson said the Borough should pursue an auction prior to selling the land for the highest and best offer. Assemblymember Painter expressed concern about the format of the agreement. Attorney Brandt-Erichsen noted the proposal was more in the form of a letter of intent and a purchase agreement would be negotiated. He said the purchase agreement would come back to the Assembly for approval. He also noted there were a lot of details involved that the Assembly had concerns about. He said it would be much easier for him and the Manager to negotiate an agreement acceptable to the Assembly if there could be some interaction between Mr. Falconer and the Assembly. He encouraged the postponement.

Assemblymember Tipton spoke in support of the sale of the property. He added he wanted an executive session scheduled as a part of the motion just in case it was needed.

Upon roll call, the vote on the motion to POSTPONE was:

YES:      LANDIS, LYBRAND, KIFFER, PAINTER, SHAY, TIPTON

NO:       THOMPSON

MOTION DECLARED CARRIED.

Mayor Salazar stated if there was no objection he wanted to serve on the committee with Manager Eckert and Attorney Brandt-Erichsen. He said he wanted a little bit more input on the whole thing. No objection was stated.

<u>Discussion concerning the request from Pacific Log and Lumber for the Borough to assume ownership of the portion of the Lewis Reef Road that was constructed by PL&L</u>

M/S Tipton/Lybrand to postpone action until staff was ready to bring a final product forward.

Assemblymember Painter spoke against the postponement because Mr. Seley was waiting to sign the contract for the Bostwick timber sale and Mr. Seley was interested in one of the parcels up for auction on Thursday. He noted the Borough had entered into an agreement with Mr. Seley to build the road and it was done.

Discussion of the merits of the Borough assuming responsibility for the road was debated by Assemblymembers.

Steve Seley, Pacific Log and Lumber, said he approached the Borough Manager about four weeks ago and laid out his plans about the Bostwick timber sale and the substantial capital his firm would have to invest. He said he felt it was necessary to reach an understanding on the Lewis Reef Road as to cost. He said he hoped the Assembly would direct the Manager to negotiate a reasonable payment agreement with him. He spoke of the quality of the road and the benefits it would provide to the Borough.

In response to Assemblymember Thompson, Mr. Seley said he wanted to use the receivable of the payment for the road or a piece of land from the auction as collateral for a loan from AIDEA.

A lengthy discussion was held among Assemblymembers and Mr. Seley about the road agreement with Pacific Log and Lumber. Mr. Seley reiterated his request to explore options regarding the road.

Assemblymember Tipton said when the proposal was made to the Assembly for construction of the road it was understood that road use fees would pay a big chunk of the costs. He noted there were differing answers to the questions about Forest Service improvements.

Discussion continued about the road and options for Mr. Seley. Manager Eckert said staff had arrived at the figure of $657,500 in verifiable costs. He said the agreement with Mr. Seley would have to be rescinded and then the Borough would be obligated to pay Mr. Seley. He listed several options available that he could pursue regarding the road.

In response to Assemblymember Thompson, Attorney Brandt-Erichsen said the biggest problem he would have would be complying with the limitation of expending the public fund. He said money could be spent in the exercise of powers that the Borough had. He said if the money was spent it had to come from an account associated with some power the Borough was exercising. Attorney Brandt-Erichsen continued to respond to Assemblymember Thompson's questions about restricting access to the road and charging for its use.

Discussion continued on Mr. Seley's request.

Assemblymember Lybrand left the meeting at 9:00 p.m.

Upon roll call, the vote on the motion to POSTPONE was:

YES:        KIFFER, SHAY, TIPTON, SALAZAR

NO:         LANDIS, PAINTER, THOMPSON

ABSENT:     LYBRAND

MOTION DECLARED CARRIED.

**Reports of Committees, Executive, Administrators**

Manager's Report

    1    Fawn Mountain Elementary School
Attached are the Project Manager's most recent report and the latest pictures.

    2.    Schoenbar Middle School
The Assembly is scheduled for a walk through of the project on July 29 at 9:00 am. The walk through has

been advertised in the paper. Attendees are asked to meet in the small parking lot on the end of the school closest to Walker Field.

3.   Alaska Shield/Northern Edge 2005

City of Ketchikan Assistant Fire Chief Jim Hill plans to provide a short verbal brief during Citizen Comments at the August 1 meeting on the upcoming exercise. The civilian portion of the exercise, Alaska Shield, is scheduled to be conducted in Ketchikan from August 15-18.

4.   Ketchikan Shipyard MOU

As you will recall, on March 28, 2005, the Assembly approved a draft of a long term MOU between the Borough, AIDEA, the City and KPU for development and operation of the Ketchikan Shipyard. After extensive negotiations between the shipyard operator, AIDEA, the City and KPU several changes were made to the draft MOU. The revised MOU was presented for a first reading to the City Council and approved on July 21. It is scheduled for a second reading on August 4.

Since the changes do not materially affect the Borough, an argument could be supported that the Assembly does not need to ratify or re-approve the revised MOU; however, since the motion to approve the original MOU on March 28 did not contain language such as "..,..or in substantially the same form...," it may be prudent to present the revised MOU to the Assembly for re-approval. As such, staff has prepared an agenda statement for the August 15 Assembly meeting recommending re-approval.

Manager Eckert recommended a joint meeting between the school board and Assembly should be held on the Schoenbar move-in questions. Assemblymember Tipton said the district had given an August 1 drop-dead date. He said this date appeared to not be feasible. He wondered if it was a mote point. Manager Eckert said he was unsure of the district's plans. Superintendent Martin said the August 1 date was given because that was the date the trucks were lined up to move the items. He said the district had continued to remain optimistic. Superintendent Martin said it was going to be tight if the district got into the building on time. He noted all of the custodians were going to be pulled off their jobs to work on the move when it happened. He said it was not ideal but the district still felt that sometime before August 15 would allow them to have the school ready for the first day of school. Superintendent Martin responded to Assembly questions. It was decided to wait for the reports from the inspectors and see what recommendations were made.

Manager Eckert advised the Assembly the plats for the Wards Cove eastside property were approved by the Planning Commission, signed, and recorded.

Manager Eckert stated the city signed the three-year agreement with the Borough regarding collection of solid waste and collection of a solid waste disposal fee.

Staff Reports [Airport—first meeting of month; Public Works—second meeting of month]

A written report from the Airport Manager was provided in the packet.

Manager Eckert said he met with Mayor Salazar regarding the airport fees and it was decided to not modify them until they could meet with the various users to resolve the issues.

In response to Assemblymember Tipton, Attorney Brandt-Erichsen explained the process and technical aspects of the proposed EPA changes to discharge amounts allowed in Wards Cove. At the urging of Assemblymember Tipton, Attorney Brandt-Erichsen then responded to further comments made by Mr. Holston regarding the upcoming Wards Cove auction.

Assemblymember Thompson asked about the White Cliff School property and Assemblymember Kiffer said the group was waiting to hear from the consultants hired to do the building survey.

Mayor's Report

Regular Assembly Meeting
August 1, 2005 – Page 12

EXHIBIT 13
Page 12 of 14

P00102

Mayor Salazar said he had the opportunity Saturday night to thank Congressman Don Young for the bridge funding. Mayor Salazar stated Congressman Young indicated he was willing to help with the new ferry.

Committee Reports

No reports given.

Assemblymembers' Comments

Assemblymember Tipton asked for the Assembly to consider moving the second meeting in September to the last Monday of the month. He said that typically had been done because of Southeast Conference. He said he sent an e-mail with questions regarding the airport and also the debt forgiveness on the loan guarantee on the Inter-Island Ferry Authority. He said that would free up another $1.7 million in the Land Trust.

Assemblymember Tipton congratulated the shipyard for the money it would receive from the transportation act. He pointed out an e-mail received from Mr. Nichols of Alcan about the Leask Users Coalition. He requested the five Assemblymembers who voted in favor of the resolution to take another look based upon some of the testimony provided by some of the group. Assemblymember Tipton said he sent Manager Eckert a list of ten questions he had about Mr. McGraw's letter. He said it would be interesting to see what occured during the discussion of the sale of the westside of Wards Cove on August 15. He expressed concern about the cost for South Tongass to provide EMS services to the City of Saxman.

Assemblymember Kiffer said he was encouraged to see the Assembly moving forward on the school district's CIP projects. He said he appreciated staff's input on the items on the agenda.

Assemblymember Thompson requested four hands to authorize the Manager to allow any Borough employees to participate in the Northern Edge operation and make sure the Borough was fully represented in that exercise.

AT LEAST FOUR ASSEMBLYMEMBERS AGREED.

Assemblymember Thompson said he was concerned about the sale of the westside of Wards Cove and cautioned everyone to not rush into anything. He said he did not believe that refusal to take $9 million would close the negotiations because the amount of property could be adjusted.

Assemblymember Thompson urged the Assembly to keep its eye on the ball regarding Lewis Reef Road. He said the point of the road was economic development by opening up Gravina Island. He said it was not a road to Seley's operation. He said the Borough had to meet its obligations in the commitments made to Mr. Seley.

Assemblymember Thompson said AMHS had people working on the purchase of some Wards Cove property and putting every operation except the director's office in Ketchikan.

Mayor Salazar said the meeting would be extended to 10:15 unless there was objection. No objections were stated.

Assemblymember Landis thanked Congressman Young for his work for the community and Alaskans. He thanked his fellow committee members that served on the Manager's Performance Committee.

Assemblymember Painter said he was disappointed the Assembly did not take stronger action on the Lewis Reef Road issue. He said he hoped something could be worked out. He congratulated the deputy clerk on the birth of her daughter and also congratulated and wished good luck to the State Champions Ketchikan Senior League All-Stars.

Assemblymember Shay said he shared Assemblymember Tipton's anxiety about the Leask Users Coalition. He said he heard some mixed messages about the recent walk-through of Schoenbar School. He noted he had driven to the Fawn Mountain project and was very pleased with the work.

Assemblymember Shay said AML had just announced a new Alaska Municipal League public awareness campaign, including the expansion of its website, talking about revenue sharing, community dividend programs, etc., and the effect of state actions on local taxpayers because of the problems at the municipal level due to lack of state support. Assemblymember Shay said he supported Attorney Brandt-Erichsen in his volunteering for the committee that was going to review local government in the Unorganized Borough.

Mayor Salazar asked if there was any objection to having the Borough Clerk draft a resolution thanking Congressman Young for his support. No objections were stated.

**Executive Session**—*Procedure: Motion is made and voted upon. If adopted, executive session is held. If necessary, action is taken in public session following the executive session. If there is more than one executive session topic, each topic will be handled completely separate from the other.*

<u>Request for executive session to discuss the employment status of the Ketchikan Gateway Borough Human Relations Manager</u>

This item was discussed earlier in the meeting and no executive session was held.

**Adjournment**—*The meeting must adjourn by 10:00 p.m. unless that deadline is extended to 10:30 p.m. by a motion approved by a majority of the assembly members present. Any extension beyond 10:30 p.m. requires a unanimous vote of all assembly members present. If the meeting is not adjourned or extended prior to 10:00 p.m., or such extended time as has been set, the meeting shall automatically recess at that time and shall be reconvened at 5:30 p.m. the following day.*

The meeting adjourned at 10:05 p.m.

_____
Borough Mayor

ATTEST:

_____
Borough Clerk

**APPROVED:** August 15, 2005.